E-FILED
Friday, 08 July, 2005 05:03:47 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BARBARA J. KENDELL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 04-1140 |
| AMERICAN INCOME LIFE OF CHICAGO and AMERICAN INCOME LIFE INSURANCE CO., | ) ) ) ) |
| Defendants. | ) ) |

## DEFENDANT AMERICAN INCOME LIFE INSURANCE CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant American Income Life Insurance Co. ("Defendant"), by its undersigned attorneys, and pursuant to Federal Rules of Civil Procedure 56 and CDIL-LR 7.1, moves the Court to enter an Order granting Partial Summary Judgment on the issue of liability in favor of Defendant on Defendant's Counterclaims against Plaintiff Barbara Kendell ("Plaintiff").

### I. Introduction

Defendant is entitled to summary judgment on its Counterclaim for breach of contract against Plaintiff because, in her deposition testimony, Plaintiff admitted that she violated a provision of the Agent Contract ("Contract") she entered into with Defendant. The Contract included a clause in which Plaintiff agreed not to use information obtained from Defendant's records to solicit Defendant's clients in the event of the termination of the Contract. Upon termination, Plaintiff became an insurance agent for Federal Life Insurance Company (Mutual) ("Federal Life"). Plaintiff testified that during her tenure at Federal Life she solicited several former clients of the Defendant, in violation of the non-

1

compete clause contained in the Contract. As such, Plaintiff breached her Contract with Defendant, and summary judgment is proper regarding the Defendant's breach of contract counterclaim.

Defendant is also entitled to summary judgment on its tortious interference with contractual relation counterclaim because Plaintiff had knowledge of the existence of the contracts between Defendant and several policy holders, and Plaintiff induced those policy holders to terminate their contracts with Defendant and to enter into new contracts with Federal Life. Plaintiff has testified that she solicited these clients to replace Defendant's insurance policies with policies from Federal Life, and this action caused damage to Defendant. Accordingly, Plaintiff interfered with the contractual relation between Defendant and its policy holders, and summary judgment is proper with regard to Defendant's tortious interference with contractual relation counterclaim.

## II. Undisputed Facts[1]

1) On or about September 25, 1998, Plaintiff entered into an Agent Contract with Defendant as an insurance agent to sell insurance of behalf of Defendant. *Excerpts of Plaintiff's Deposition are attached as Exhibit A; see pp. 449-452.*

2) Defendant invests substantial time and money in obtaining and maintaining the client database system. *Affidavit of Debbie Gamble is attached as Exhibit B; see p. 1.*

3) Plaintiff has testified that she considered working as an agent for Defendant because she was "tired of doing the prospecting on my own." *Exhibit A, p. 132.*

---

[1] The Statement of Facts is for purposes of summary judgment only. Defendant does not admit or otherwise concede to Plaintiff's allegations, testimony or statements under oath stated herein and does not waive its right to dispute and/or disprove Plaintiff's allegations at any later time or at trial.

4) Plaintiff has testified that she "just about understood every one [of the contractual provisions] that was in the contract." *Exhibit A, p. 222.*

5) The Contract, signed by the Plaintiff, contained a Termination Section that provided in relevant part:

> After termination the Agent will never use policyholder records, union or credit union membership records, or other business records concerning the business of the Company, including, but not limited to, lead return cards, policyholder lists, computer disks or other storage media, no matter how or when obtained, and whether prepared by the Company, the Agency, the Agent, or any other person, for the purpose of soliciting the sale or replacement of insurance by the Agent or by others. All such records will be returned to the Company without retaining copies.
>
> After termination, the Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or any other way to injure the business or reputation of the Company. *See Doc. 25, p. 15.*[2]

6) Plaintiff testified that she recalls reading a statement in the Contract stating that Plaintiff will never directly or indirectly attempt to induce Defendant policyholders to terminate policies or in any other way injure the business or reputation of Defendant. *Exhibit A, p. 226.*

7) Plaintiff testified that she has knowledge that this clause is a restrictive covenant or non-compete clause, and Plaintiff describes the clause as one which means "I will never do business with anybody who I saw from American Income leads, sold policies for American Income to, and I would never to a client of American Income in any way bad-mouth them." *Exhibit A, pp. 226-227.*

---

[2] "Averments in a pleading to which a responsive pleading is required...are admitted when not denied in the responsive pleading." *Fed. R. Civ. Pro. 8(d).*

3

8) Plaintiff admits that she sold Miladefina O. Senecal ("Senecal") an American Income Life policy. *Excerpts of Plaintiff's Responses to Defendant's First Requests to Admit are attached as Exhibit C; see p. 11.*

9) Plaintiff admits that she sold Mark C. Hodge ("Hodge") an American Income Life policy. *Exhibit C, p. 12.*

10) Plaintiff admits that she sold Dawn A. Callear ("Callear") an American Income Life policy. *Exhibit C, p. 13.*

11) Plaintiff admits that she sold Judith E. Hockman ("Hockman") an American Income Life policy. *Exhibit C, p. 14.*

12) Plaintiff admits, by operation of law for failure to reply to Defendant's counterclaim, that Defendant performed all of its contractual obligations relating to Plaintiff. *See Doc. 25, p. 16.*

13) On or about August 5, 2001, Plaintiff received notice from Defendant that the Contract had been terminated, effective July 31, 2001. *Exhibit A, p. 277.*

14) After Plaintiff's Contract was terminated, Plaintiff became an insurance agent for Federal Life. *Exhibit C, p. 11.*

15) In or around August 2002, Plaintiff attempted to replace, and did replace, Senecal's American Income Life policy with a policy from Federal Life. *Exhibit C, p. 11.*

16) In or around November 2002, Plaintiff attempted to replace, and did replace, Hodge's American Income Life policy with a policy from Federal Life. *Exhibit C, p. 12.*

17) In or around November 2002, Plaintiff attempted to replace, and did replace, Callear's American Income Life policy with a policy from Federal Life. *Exhibit C, p. 13.*

18) In or around November 2002, Plaintiff attempted to replace, and did replace, John L. Callear's American Income Life policies with policies from Federal Life. *Exhibit C, pp. 13-14.*

19) On or about November 14, 2002, Defendant received a "Notice Regarding Proposed Replacement of Life Insurance or Annuity," informing Defendant that Plaintiff was attempting to replace James E. Hockman's American Income Life policies with policies from Federal Life. *Exhibit B, p. 2.*

20) In or around January 2003, Plaintiff attempted to replace, and did replace, Hockman's American Income Life policy with a policy from Federal Life. *Exhibit C, p. 14.*

21) In or around May 2003, Plaintiff attempted to replace, and did replace, Jay De Valkenaere's American Income Life policy with a policy from Federal Life. *Exhibit C, pp. 15-16.*

22) In or around June 2003, Plaintiff attempted to replace, and did replace, Kevin G. Brummitt's American Income Life policy with a policy from Federal Life. *Exhibit C, p. 15.*

23) Plaintiff has admitted that after the first year following the termination of the Contract she no longer abided by the provisions of the non-compete clause. *Exhibit A, p. 227.*

### III. Legal Argument

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Davis v. G.N. Mortgage Corp.*, 393 F.3d 869, 878 (7th Cir. 2005). A genuine issue of fact is one "that can properly be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Zemco Mfg. Inc. v. Navistar Int'l Transp. Corp.*, 270 F.3d 1117, 1123 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The moving party must show, through specific evidence, that no triable issues of fact remain on issues which it bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### B. Illinois Law Applies

In a case which normally would have arrived in federal court premised on diversity jurisdiction under 28 U.S.C. 1332, courts apply the substantive law of the forum state, here Illinois. *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869 (7th Cir 2005). This Court must "determine the issues presented herein as [it] believe[s] the Illinois courts would." *See Trytko v. Hubbell, Inc.*, 28 F.3d 715, 719 (7th Cir. 1994) (quoting *Kutsugeras v. AVCO Corp.*, 973 F.2d 1341, 1346 (7th Cir. 1992)).

### C. Plaintiff's Admissions Entitle the Defendant to Judgment as a Matter of Law on Defendant's Breach of Contract Counterclaim

> 1. **Summary Judgment is proper because Plaintiff has admitted that she entered into a contract with Defendant and breached a provision of that contract.**

Plaintiff's binding admissions and testimony show that there is no genuine issue of fact with regard to Defendant's breach of contract counterclaim because no reasonable trier of fact could resolve the existence and breach of the contract in favor of Plaintiff. *Zemco,* 270 F.3d at 1123.

Plaintiff has testified that she entered into a valid contract with Defendant on September 25, 1998. Further, Plaintiff has testified that she understood the terms of the agreement; specifically, Plaintiff understood the provision of the contract which she considered to be a non-compete clause. With full understanding of the non-compete clause, Plaintiff admitted that she breached this provision of her contract. These statements leave no genuine issue of material fact to be resolved.

The only issue that remains is the enforceability of the non-compete clause. Under Illinois law, "the enforceability of a [non-compete clause] is a question of law," *Appelbaum v. Appelbaum,* 355 Ill.App.3d 926, 934, 823 N.E.2d 1074, 1082 (1st Dist. 2005), and therefore not a matter to be determined by the trier of fact.

### 2. Summary Judgment is proper because the non-compete clause, which Plaintiff breached, was enforceable under Illinois law.

Under Illinois law, a restrictive covenant is unenforceable if its sole purpose is to restrict competition. *Scheffel & Co., P.C. v. Fessler,* 356 Ill.App.3d 308, 827 N.E.2d 1, 6 (5th Dist. 2005). In order for a restrictive covenant to be enforceable, the covenant must be reasonably necessary to protect the business from competition which would be "commonly regarded as improper or unfair." *Lyle R. Jager Agency, Inc. v. Steward,* 253 Ill.App.3d 631, 637, 625 N.E.2d 397, 401 (3rd Dist. 1993). This general rule imposes two requirements: first, the terms of the covenant must be reasonable, *Scheffel,* 827

N.E.2d at 6, and second, the company must have legitimate business interest requiring protection, *Jager*, 625 N.E.2d at 401.

### a. The terms of the non-compete clause are reasonable.

In determining the reasonableness of a non-compete clause, Illinois courts examine factors such as the geographic scope and temporal limitations of the clause. *Prudential Insurance Co. of America v. Sempetrean*, 171 Ill.App.3d 810, 816, 525 N.E.2d 1016, 1020 (1st Dist. 1988). Generally, "where an agreement provides neither a time limitation nor a geographic boundary in which the activity sought to be prohibited should not take place, the restriction is too vague and ambiguous to be enforced..." *Id.* at 1021. Conversely, Illinois courts have found non-compete clauses reasonable where their duration has been two to three years and geographically limited to the counties in which a particular business operates. *See Scheffel*, 827 N.E.2d 1; *Com-Co Insurance Agency, Inc. v. Service Insurance Agency, Inc.*, 321 Ill.App.3d 816, 748 N.E.2d 298 (1st Dist. 2001).

Plaintiff's Contract with Defendant provided that "...Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or any other way to injure the business or reputation of the Company." This clause contains neither an explicit geographic limitation nor a temporal limitation. The clause is similar to one which an Illinois court refused to enforce in *Prudential Insurance Co. of America v. Sempetrean*. In *Prudential*, a former insurance agent of the company entered into a termination agreement with Prudential which recited "...I do hereby agree not to directly or indirectly...solicit or encourage termination or replacement of Prudential insurance policies." *Prudential*, 585 N.E.2d at 1019. The court held that to enforce such an ambiguous clause would work too great a burden on the livelihood of the employee.

*Id.* at 1021. Despite its similarity to the *Prudential* clause, the clause at issue in this case can be distinguished and is enforceable under the law of Illinois.

The non-compete clause at issue in *Prudential* was created as a result of a termination agreement entered into between the company and a former agent after a dispute arose concerning the payment of commissions. *Id.* at 1019. Prudential required the agent to sign the agreement as a condition of his departure, in exchange for Prudential's promise not to bring suit to recover past commissions. *Id.* The former agent was in a substantially less powerful position than Prudential. If he resigned without signing the agreement, Prudential would be permitted to bring suit seeking re-payment of past commissions. If he entered into the agreement, his ability to continue engaging in his chosen profession would be severely limited. *Id.* at 1021. This factual backdrop played a significant role in the court's decision to hold the non-compete clause unenforceable.

In contrast, Plaintiff voluntarily entered into the employment contract with Defendant which contained the non-compete clause. As an Illinois court has stated:

> If a salesman has agreed to a restrictive covenant in his employment contract, or if he has fraudulently or surreptitiously copied or removed lists of customers from a prior employer, or if the names of actual or potential customers are confidential…then, under proper circumstances, such salesman might be enjoined from soliciting business from the customers of his prior employers. *Revcor, Inc. v. Fame, Inc.*, 85 Ill.App.2d 350, 357, 228 N.E.2d 742, 746 (2nd Dist. 1967).

While Plaintiff was required to enter into the agreement if she wanted to sell Defendant's policies, Plaintiff was also free to seek more favorable terms from a different insurance company. Therefore, the disparity in bargaining power was not present as it was in *Prudential*, and on that basis, the non-compete clause is inherently more reasonable.

A second point of distinction between the two clauses lies in the underlying purpose for which the clauses were created. As will be described in the subsequent section, Defendant had a legitimate business interest which the clause was intended to protect. In *Prudential*, the court found that Prudential had no business interest which would be protected by the non-compete clause. Instead, the court held that the clause was "a method of protecting Prudential against competition *ad infinitum* rather than a reasonable protection of Prudential's interest." *Prudential*, 585 N.E.2d at 1021. Because the court in *Prudential* did not find a legitimate business interest, it could not declare the non-compete clause to be enforceable.

A final distinction between the two clauses turns on the underlying public policy, suggesting why Illinois courts disfavor non-compete clauses. *Advent Electronics, Inc. v. Buckman*, 112 F.3d 267 (7th Cir. 1997). Illinois courts have articulated that policy by recognizing that "an individual has the fundamental right to pursue a particular occupation for which he is trained." *Scheffel*, 827 N.E.2d at 6 (quoting *Millard Maintenance Service Co. v. Bernero*, 207 Ill.App.3d 736, 744, 566 N.E.2d 379, 383 (1st Dist. 1990)). Therefore, any restriction which unreasonably prevents an individual from pursuing that occupation is unenforceable. In *Prudential*, the court determined that the former insurance agent was not adequately informed of the scope of his obligations under the non-compete clause as a result of the failure to include a geographic or temporal limitation. *Prudential*, 525 N.E.2d at 1021. If the agent desired to continue to perform his occupation (selling insurance), the agent would run the risk of being haled into court and being exposed to expensive litigation to determine under what conditions he could continue; such a risk was deemed to be unreasonable by the court. *Id.*

In contrast, the clause at issue here informed Plaintiff explicitly what her obligations were. Upon termination, Plaintiff was not permitted to use Defendant's records to solicit clients for other insurance providers. Additionally, the Plaintiff was not permitted to solicit Defendant's existing clients to switch to a new insurance provider. Furthermore, Plaintiff has testified that she understood these obligations. The clause did not prevent Plaintiff from engaging in the occupation of selling insurance. Plaintiff was merely obligated not to pirate Defendant's clients; she could still sell insurance to people who were not clients of the Defendant. The clause was also clearly drafted, so as to plainly delineate the obligations of Plaintiff. This removes the risk of expensive litigation, which the *Prudential* court recognized as a barrier to enforceability. *Id*. Because the non-compete clause does not restrict Plaintiff's ability to engage in her chosen occupation and would not subject her to expensive litigation, it is reasonable.

Even though the non-compete clause contains neither a geographic nor temporal limitation, it is reasonable. Plaintiff had knowledge of the clause and an opportunity to avoid it. The clause serves a legitimate business purpose, and Plaintiff is not prevented from practicing her occupation by its terms. These factors demonstrate that the clause is reasonable under Illinois law, and Summary Judgment in favor of Defendant is proper.

### b. The Defendant has a legitimate business interest, which requires the protection afforded by the non-compete clause.

Under Illinois law Defendant can establish that it has a legitimate business interest in the non-compete clause if Defendant shows it has a near-permanent relationship with its customers, and, but for her relationship with Defendant, Plaintiff would not have had access to those customers. *Appelbaum,* N.E.2d at 1082.

Inquiring into whether a near-permanent relationship exists requires application of the "nature of the business" test. *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill.App.3d 557, 571, 599 N.E.2d 1072 (1st Dist. 1992). According to this test, businesses which engage in providing professional services or selling unique products are more successful in showing near-permanent relationships. *Id.* Additionally, near-permanent relationships are generally absent from businesses engaged in sales. *Springfield Rare Coin Galleries, Inc. v. Mileham*, 250 Ill.App.3d 922, 935, 620 N.E.2d 479 (4th Dist. 1993).

Illinois courts have been hesitant to imply a near-permanent relationship as between an insurance company and an insured. *Com-Co*, 748 N.E.2d 298. "The mere potential to become a long-standing customer is not sufficient...[W]e again emphasize the transient nature of insurance policies in general." *Rapp Insurance Agency, Inc. v. Baldree*, 231 Ill.App.3d 1038, 1042, 597 N.E.2d 939, (5th Dist. 1992).

Despite the suggestion of a requirement of a near-permanent relationship, in circumstances where a business "has spent a substantial amount of time and money to obtain and maintain its clients," Illinois courts have found that the business has a protectible interest in its clients that would be harmed if the restrictive covenant were not enforced. *Scheffel*, 827 N.E.2d at 5-6. This suggests that an alternative method of defining a legitimate business purpose exists under Illinois law.

The undisputed facts establish that Defendant spent considerable time and money in establishing the client lists. This fact is supported by Plaintiff's contention that she made her decision to enter into the contract with Defendant because she was "tired of prospecting on [her] own," implying that it would be Defendant's responsibility to locate

clients to solicit. Regardless of the existence of a near-permanent relationship, Defendant had a legitimate business interest to be protected by enforcing the non-compete clause.

Further, once Plaintiff was employed by Federal Life, after her contract with Defendant was terminated, she began to solicit parties that she had sold Defendant's policies to replace Defendant's policies with Federal Life's. In ruling on a summary judgment motion, this Court is permitted to make reasonable inferences from the record. *Gleason v. Mesiron Fin., Inc.,* 118 F.3d 1134, 1139 (7th Cir. 1997). A reasonable inference from Plaintiff's actions includes the observation that, but for her relationship with Defendant, she would not have had access to these individual's contact information. Therefore, but for her relationship with Defendant, Plaintiff would not have had the ability to solicit the replacement of Defendant's policies.

For the foregoing reasons, Defendant had a legitimate business purpose in creating and enforcing the non-compete clause; therefore, Summary Judgment is proper.

### D. Plaintiff's Admissions Entitle the Defendant to Judgment as a Matter of Law on Defendant's Tortious Interference with Contractual Relation Counterclaim

Under Illinois law, the elements for a cause of action for tortious interference with a contractual relation are: 1) a valid contract; 2) knowledge of the existence of the contract; 3) intentional and malicious inducement of the breach of contract; and 4) breach caused by wrongful conduct. *George A. Fuller Co. v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326, 1330 (7th Cir. 1983).

The malice requirement in the third element does not require ill will or hostility, but only encompasses the idea that a party acted "intentionally and without just cause." *Id.* at 1332. In Illinois, just cause is determined using a balancing test which weighs the

13

protection of contractual relations against legally repugnant forms of interference. *Id.* Additionally, the test for inducement "requires an intention on the part of the actor to interfere with another's contractual relation." *In re Douglas Dunhill, Inc.,* 22 B.R. 953, 956 (Bankr.N.D.Ill. 1982).

Plaintiff has admitted that she sold Defendant's life insurance policies to Senecal, Hodge, Callear and Hockman. Plaintiff also has admitted that she attempted to induce James E. Hockman, Jay De Valkenaere, Kevin G. Brummit and John Callear to replace their life insurance policies issued by Defendant to policies issued by Federal Life. Therefore, the first two elements of the cause of action are met. Senecal, Hodge, Callear, Hockman, James E. Hockman, Jay De Valkenaere, Kevin G. Brummit and John Callear (collectively the "Policyholders") all had life insurance policies/contracts with Defendant, and Plaintiff had knowledge of the existence of those contracts.

As to element three, after Defendant's contract with Plaintiff was terminated, Plaintiff began to work for Federal Life. During this employment, Plaintiff intentionally and maliciously induced the Policyholders to breach their life insurance contracts with Defendant and to replace these contracts with ones from Federal Life. Despite knowing about each party's contract with Defendant, Plaintiff induced these individuals to switch to Federal Life policies. Plaintiff acted intentionally and without just cause in inducing the breach of these contracts and blatantly ignored the contractual rights of the Defendant with respect to each of the individuals. Such an action is legally repugnant and should not be permitted by this Court.

As discussed previously, Plaintiff ignored the contractual rights of the Defendant and solicited the Policyholders to breach their agreements with Defendant and enter into

replacement policies from Federal Life. Such actions satisfy the fourth element, a breach of contract caused by Plaintiff's wrongful conduct.

Plaintiff's admissions are sufficient to establish a cause of action for tortious interference with contractual relations and that no genuine issue of material fact exists. As such, Defendant is entitled to Summary Judgment.

### IV. Conclusion

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion for Partial Summary Judgment on the issue of liability.

DATED: July 8, 2005.                    Respectfully submitted,

/s/ Cassandra J. Hansell
Cassandra J. Hansell, #06271228
BURROUGHS, HEPLER, BROOM
MacDONALD, HEBRANK &
TRUE, LLP
Two Mark Twain Plaza, Suite 300
Edwardsville, Illinois 62025-0510
Phone: (618) 656-0184
Fax: (618) 656-1364
Email: cjh@ilmolaw.com

*Attorneys for American Income Life Insurance Co.*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was sent to the following counsel/parties of record via First Class U.S. Mail, postage prepaid, this 8th day of July, 2005:

Barbara J. Kendell
504 W. High St.
Peoria, IL 61606

/s/ Cassandra J. Hansell