E-FILED
Monday, 26 September, 2005 10:17:03 AM
Clerk, U.S. District Court, ILCD

**ASSOCIATED UNIVERSITY NEUROSURGEONS, S.C.**

UIC - College of Medicine at Peoria
Department of Neurosurgery
Clinical Faculty:
D.H. Dinh, M.D.
P.W. Elwood, M.D.
W.C. Hanigan, M.D.
J.P. Henderson, M.D.
J.R. Lister, M.D.
W.C. Olivero, M.D.
P.T. Tracy, M.D.

**Please Send Correspondence to**
**719 N. Kumpf Blvd. - Suite 100**
**Peoria, IL 61605**
**(309) 676-0766**

September 12, 2000

JOSEPH COURI MD
MIDSTATE RHEUMATOLOGY ASSOCIATES
120 NE GLEN OAK AVE #408
PEORIA IL 61603

**RE: BARB KENDELL**

Dear Joe:

I'm seeing Mrs. Kendell for a lumbar juxta facet cyst. She's had about five months of left sciatica in an approximate L5 distribution and has had a recent MRI, which shows a left L4-5 juxta facet cyst, protruding into the spinal canal, and causing neural compression, as the cause of this. Otherwise, she has a history of asthma and fibromyalgia. Her current medicines are Synthroid, 0.05 mg daily, Motrin, 800 mg t.i.d., Vicodin, every 6 hrs, Trazodone, 50 mg q hs, and Flexeril, one at bedtime. She is allergic to Sulfa and Darvon Compound; both of these cause an upset stomach. She sees you and Dr. Bob Meister. Prior surgeries include eye surgery in 1960, bone graft of the fingers in 1961, removal of a calcium deposit, and an appendectomy in 1950. Her family history was negative. She works as in the insurance industry, and her livelihood is dependent on commission, so she cannot afford to miss much work, but has been unable to pursue her work duties lately. She has a high school education. She's never used any illicit drugs. She smokes cigarettes, about a pack a day. She has about five alcoholic beverages a week and about one caffeinated beverage per day.

On examination, her blood pressure is 116/78, pulse is 72, respirations are 16, and she is afebrile. HEENT are normal. Neck is supple, with no bruits, no thyromegaly or lymphadenopathy. Chest is clear. Heart reveals regular rhythm, without murmur or gallop. Abdomen is soft, nontender, without organomegaly or mass. Genitorectal is deferred. Extremities are normal in appearance and mobility. Straight leg raise maneuver is positive at 75° on the left. She has no skin lesions. Psychiatric is normal. Heme/lymph/immune is normal.

On neurologic testing, she has a mild left foot drop, with 4+/5 strength of left ankle extension, and 4/5 strength of left toe extension. Her gait is antalgic, but otherwise normal. She does not seem to have very much difficulty heel walking. Her reflexes are 1/4 and symmetric, except for trace/4 and symmetric at the ankles. On sensory testing, she has slight hypalgesia of the dorsum of the left foot, but

**BLOOMINGTON OFFICE:** Eastland Medical Plaza, 1505 Eastland Drive, Bloomington, IL 61701, (309) 827-7863

**PERU OFFICE:** 2011 Rock St., Suite D2, Peru, IL 61354, (815) 223-7861

**GALESBURG OFFICE:** Cottage Hospital, 695 N. Kellogg St., Galesburg, IL 61401, (309) 345-4202

**KEWANEE OFFICE:** 716 Elliott St., Kewanee, IL 61443, (309) 854-0323

**MACOMB OFFICE:** McDonough District Hospital, 525 E. Grant Street, Macomb, IL 61455, (309) 833-4101

*Scanned.*

her sensation in her left great toe seems normal. Mental status, language, memory, coordination, and cranial nerves are all normal.

I reviewed the aforementioned MRI study and concur with the results.

I did not appreciate any significant spondylolisthesis at L4-5 on the MRI, but dynamic lumbar radiographs would be a better test of this. Basically, I think she will require surgical treatment of the juxta facet cyst, because usually the symptoms will get progressively worse. The particular operation would be dependent on the results of the dynamic lumbar radiographs. Basically, if there is any evidence of any instability, she should undergo a decompression and fusion. If not, then a simple hemilaminotomy with resection of the synovial cyst should be performed. She is going to get the studies and then return to see me later this week. She is then scheduled to go to Barnes Hospital to see a neurosurgeon there next Tuesday, 9-19-00, as a second opinion.

I'll keep you informed of her progress. Thank you for allowing me to participate in her care.

Sincerely,

Patrick T. Tracy, M.D.
Assistant Professor of Neurosurgery

PTT:jmp

Scanned.

**STATE OF ILLINOIS**
**DEPARTMENT OF EMPLOYMENT SECURITY**
**APPEALS DIVISION**
**REFEREE'S DECISION**

**APPEAL DOCKET NO.** L 48679

**LOCAL OFFICE:** 33

**CLAIMANT:** (Appellant)

Barbara Kendell
504 W. High Street Upper Level
Peoria, IL 61606

**EMPLOYER:**

Scott Smith
American Income Life Ins. Co.
5509 Belmont Road
Downers Grove, IL 60515

**SOCIAL SECURITY NUMBER:** 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
**DATE OF APPEAL:** October 12, 2001
**DATE OF RECONSIDERATION:** Oct 18, 2001
**BENEFIT YEAR ENDING:** Sept. 15, 2002

**ACCOUNT NUMBER:** 04238714
**DATE OF HEARING:** Nov, 15, 2001
**PLACE OF HEARING:** Telephone
**DATE OF MAILING:** DEC 5 2001

**SECTIONS OF THE ILLINOIS UNEMPLOYMENT INSURANCE ACT/RULES:**
500E Eligibility for Benefits--Base Period Wages
228 Insurance Agent Paid Solely by Commission

**APPEARANCES:** The claimant and the employer appeared and testified at the hearing.

**ISSUE(S):** Whether the claimant was an insurance agent compensated solely by way of commission.

**FINDINGS OF FACT:** The claimant was employed as an insurance agent from September 1998 to June 2001. She testified that she was a seller of life insurance and accident insurance policies and was paid primarily by commission. The employer, Scott Smith, State general agent, testified that claimant was paid by commission 100% and the claimant agreed. However, the claimant first testified that she was paid an advance based on a percentage of annualized premiums. She explained, for example, that if she sold one $15,000.00 policy, the employer paid her a percentage in advance as if she'd actually earned the entire commission over a year. Later, if the policy holder dropped coverage, the employer would deduct the unearned premium from claimant's next pay check. She testified that this occurred frequently, each month. No evidence or testimony was proffered by the employer to dispute her testimony. Rather, the employer presented testimony to show the claimant was an "independent contractor." Claimant's 1099 form shows she received $45,503.09 in miscellaneous income from the employer in calendar year 2000. Her base period ran from April 1, 2000 through March 31, 2001.

**STATEMENT OF LAW:** Section 500E of the Illinois Unemployment Insurance Act (the Act) provides, in pertinent part:

> An unemployed individual shall be eligible to receive benefits with respect to any week only if the Director finds that...he has been paid during his base period wages for insured work equal to not



less than $1,600, provided that he has been paid wages for insured work equal to at least $440 during that part of his base period which does not include the calendar quarter in which the wages paid to him were highest.

Section 228 of the Act provides:

> The term "employment" shall not include services performed by an individual as an insurance agent or insurance solicitor, if all such services performed by such individual are performed for remuneration solely by way of commission.:

> In *Commonwealth Life & Acc. Ins. Co. v Board of Review*, the Illinois Supreme Court stated as follows: The word "commission" is defined as the recompense or reward of an agent . . . when the same is calculated as a percentage on the amount of his transactions or on the profit to the principle. In its ordinary meaning, "commission" denotes compensation paid for work measured by results achieved. "Salary," on the other hand, is defined as a fixed annual or periodical payment depending upon time and not amount of service rendered. 414 Ill. 475, 111 N.E. 2d 345,349 (1953.)

In the instant case, the claimant's advance was not contingent upon earning a commission, but rather on the insured person not canceling the annualized policy. A commission earned is something that one can retain. An advance that must be returned when an annualized policy is canceled is something other than a commission, regardless that the parties may characterize it as such.

> [T]he payment of fixed, unvarying sums each week, without respect to the amount of insurance sold in that week, does not constitute payment by way of commissions, within the meaning of the statute, but constitutes wages paid in the week it is received. . . . [C]ourts need not be bound by the terminology applied to the weekly stipend by the parties, but must look beyond it to the actual relationship of the parties; the controlling element in determining whether the amount received is upon a commission or salary basis being whether that amount, by whatever name it may be called, is absolute and fixed regardless of what the lawful commissions may be, or is made contingent upon earning that amount as commissions. 111 N.E 2d at 349.

**CONCLUSION:** The claimant testified credibly that "all" services performed for the employer were not remunerated solely by way of commission and was not disputed by the employer. The findings should be modified to show the wages set forth in the table below:

**BASE PERIOD QUARTERS AND WAGES PAID**:

| **Employer** | **Acct. #** | **2/00** | **3/00** | **4/00** | **1/01** |
|---|---|---|---|---|---|
| American Income Life Ins. Co. | 04238714 | $15,167.00 | $15,167.00 | $15,167.00 | |
| **Total:** | | $15,167.00 | $15,167.00 | $15,167.00 | 0 |

**DECISION:** The determination of the claims adjudicator is modified to conform to the findings and conclusions stated herein.

R.E. HAYES, Hearings Referee 511

**RIGHT OF REHEARING OR FURTHER APPEAL:** A party who failed to attend the hearing may request a rehearing of the appeal **OR** file a further appeal with the Board of Review. A request for rehearing must be made within 10 days of the scheduled hearing or first receipt of the notice of hearing, whichever is later. A request for rehearing must be made **in writing**, to the Appeals Division, Administrative Hearings, 401 S. State LL, Chicago, Illinois 60605, directed to the Referee whose name appears on this decision. An appeal to the Board of Review must be **in writing**, and filed within 30 days from the date of mailing shown above. The appeal to the Board may be filed at the local unemployment insurance office where the claim was filed, or with the Board of Review, 401 South State, Chicago, Illinois 60605.

Q. What about Scott Smith's agency?
A. No.
Q. Did AIL Waco pay for your office supplies?
A. I'm not sure.
Q. What about Scott Smith's agency?
A. That's why I'm not sure who was paying for the office supplies.
Q. Who supplied the office supplies to you? Was that Scott Smith's agency or Waco?
A. I don't know.
Q. Okay. So if -- so you have no idea who paid for the office supplies?
A. We were given pens. We were given paper. We were given pencils. We were given all the paperwork. We were using the fax -- there was the fax machine. We were given the phone to use.
Q. Okay. Barb --
A. I don't know who --
Q. -- focus on the question.
A. -- paid the bill.
Q. Just focus on the question that I asked. Those are yes or no.
A. I don't know who was paying.
Q. Okay. And you answered it. Did AIL Waco pay

 Exhibit 7

for any fees that you were required to pay for being an insurance agent?

A. Such as?

Q. Do you have an annual fee to maintain your license?

A. Oh, no, no. They were not doing that, no.

Q. What about Scott Smith's agency?

A. Nope.

Q. Are you aware of anything else that AIL Waco paid for relating to your insurance agent position?

A. Other than the medical and the group, nope.

Q. Okay. What about Scott Smith's agency?

A. Other than the same thing, nope.

Q. Okay. We talked about the insurance. And you said Waco chips in, Scott Smith's agency chips in, and this was -- did you say that was at the very end?

A. In -- in to the medical?

Q. Yes, where they were both chipping in?

A. (Nodded head up and down.)

Q. Okay. Besides that, that you mentioned, the insurance, did AIL Waco provide you with anything else you would consider to be a benefit?

A. Sales stuff, but other than that, no.

Q. What sales stuff?

A. The flip charts and third party articles and stuff you use to back up why this is a good idea, and the letters that they would send out to the union, and they would send us copies to be able to show this is what your brother -- this is what your -- they sent all of that kind of stuff.

Q. Is that from the union or is that from AIL Waco?

A. That was from Waco.

Q. Waco. And you consider that to be a benefit?

A. Well, yeah, it led to your credibility as being there from a union label company.

MS. HANSELL: Okay. Let's take a break.

(Whereupon a recess was taken from 2:02 p.m. to 2:15 p.m.)

Q. (By Ms. Hansell) Barb, on the commissions that you made, I just want to -- oh, sorry.

Okay. Just so that I'm clear on this, on the commissions that you made, you only received commissions on policies sold, right? It was not on the time you spent?

A. (Nodded head up and down.)

Q. Is that --

A. True.

Q. -- correct? Did you accumulate -- as an

insurance agent for AIL, did you accumulate any retirement benefits?

A. On the 20 percent that they didn't pay out on the 80 percent -- remember when I said we were paid 50 percent or 52 percent.

Q. Yes.

A. And 80 percent of that was paid right away and they held 20 percent back. That was supposed to be for retirement. And what actually happened to that, I have no idea.

Q. And retirement meaning just extra money for you to have to save towards your retirement?

A. Correct.

Q. But there was no retirement, any type of policies or anything like that?

A. If there was, I don't know about it.

Q. Okay. What about retirement benefits from Scott Smith's agency?

A. No, it was all through Waco.

Q. Okay. And, again, I just want to make sure I'm really clear on this. The retirement benefits you are talking about, it really was just a commission? It was money paid to you? You could go out and shop and buy a new wardrobe if you wanted?

A. It was money that would eventually sometime in the future be paid to us.

Q. Okay. So it actually wasn't paid to you?

A. No, it was not paid to us.

Q. Okay.

A. And what actually ever happened to it, I don't know.

Q. Does this go back to your first year renewals and commissions?

A. That was part of it. If you are paid -- say you spent -- you sold $100.00. You get paid 50 percent, 50 bucks.

Q. Okay.

A. They are going to advance you 80 percent of the 50 bucks, which is what, 40, I think. Then they take the other ten and they would put it in a fund somewhere, heaven only knows where, that eventually, when that fund got to a certain point and you had reached retirement age or ten years down the line or three years down the line, it was never really explained to me, that money would come back to you.

Q. So you are saying, then, that AIL Waco would invest that, in your analogy you had a $10 amount. They would invest that on your behalf; is that correct?

A. Into some type of a fund and do something with it. But what I don't know.

Q. And then at the age of retirement, being 65 --

A. When you -- after you are vested, or after you retire from the company then that money, because it is still part of your first year commission, would be given to you.

Q. Okay. Okay. I understand now. Did AIL Waco pay any Social Security taxes on commissions that they paid to you?

A. No.

Q. What about Scott Smith's agency?

A. No.

Q. When you first started selling insurance on behalf of AIL Waco, did you believe that you were an independent contractor or an employee?

A. Independent contractor.

Q. At some point in time your belief changed; is that correct?

A. Yes.

Q. You decided that you were an employee and not an independent contractor; is that correct?

A. Right.

Q. Okay. What took -- what happened for you -- I

want to know when and what facts, I guess, support your belief that you became an employee?

A. It was a gradual, and I can't specifically say a particular date, but it was when I realized that anytime I took a day off for any reason Terry expected me to make that day up instead of as an independent contractor if I want to work one day a week, I should be able to work one day a week.

Q. Okay. Let me ask you this. Would it be a situation where you say a day where you had appointments scheduled with potential clients and you chose to take that off, so you missed all those appointments, is that what he wanted you to make up?

A. No, a day that had been scheduled ahead of time.

Q. So a day, for example, let's say next week --

A. I don't want to work --

Q. -- you want to take Friday off of next week.

A. (Nodded head up and down.)

Q. Terry would say to you, Barb, sorry, no, you can't take it off, but if you do take it off, you will have to make that up at another time?

A. (Nodded head up and down.)

Q. Is that correct?

A. Correct. He would either say, no, I need you in

the field that day if it was something like that, I was just taking a personal day or if I it was a doctor day that I had to go to the doctor. Well, okay, make your appointment in the morning I won't have Sue set the first hour appointment for you, but the second hour will be set. Or if I had to take Curt over to Indianapolis and he would say, fine, you take that day off, but you -- when are you coming back? Are you coming back Sunday? Are you coming back Saturday? Fine. You will work Sunday instead.

Q. And did you work Sunday?

A. Well, if Sue set the appointments.

Q. Okay. So because of Terry telling you that you had to work, you couldn't take time off, that's when you decided you were an employee?

A. That's when I decided that I was not an independent contractor, yes.

Q. Okay. You were an employee, then, correct?

A. You are either one or the other, yes.

Q. In your mind?

A. (Nodded head up and down.)

Q. Did you report this to anyone? Did you call anyone and tell anyone that this was going on?

A. That was one of the conversations that I had

with Scott. And he said he expected the agents to be out in the field five or six days a week. And that if we couldn't do that, well, then we just didn't need to work for American Income.

Q. That's exactly what Scott said to you?

A. Paraphrased basically, yeah.

Q. Did Terry make all of his agents -- did he treat everyone the same way with respect to taking a day off?

A. I don't know.

Q. Did you ever hear any other agents complaining about the fact that Terry would not let them take a day or that Terry required them to make up a day?

A. I remember that Bill Butler, I think it was Bill, one of the young guy agents, their grandmother or mother was sick. And he took a week or two off because of family problems. And I don't ever remember him ever saying that Terry made him make it up, no.

Q. So Terry may have made him make it up? You just don't know?

A. I don't -- I don't know.

Q. Okay.

A. I know I talked with Mike Holtz about when Terry had hired him. I remember Terry telling Mike that -- because Mike is a farmer, that he could have planting

season off and then combine season because he is a farmer. And that he was taking some of the days off. Some of them I think he said Terry had him work later to make up, some not. You would have to ask Mike.

Q. Okay. So you are aware of one -- Mike was out of what office?

A. The Quad Cities office.

Q. Okay. So Mike Holtz, when he started as an agent he had an agreement prior to becoming an agent that he would have those seasons or those farming time periods off, he would not be an agent for AIL; is that correct?

A. He would be a part-time agent for AIL during those seasons, is my understanding.

Q. Okay. Okay. So anyone else in a situation similar to yours, where you want to be an agent out there selling in the field on a regular basis and you want to take a day and not sell agents -- or not sell policies, and Terry made them make up that date?

A. I think he made Sandy make up some days that she was off.

Q. How do you know that?

A. I remember when we were sitting around the table and she was complaining about it on a Monday meeting.

Q. Do you remember what she was saying?

A. That she had to work on Sunday to make up for something or other. And I don't remember. You would have to ask Sandy.

Q. Okay. So you are not sure then why she was working on Sunday?

A. I know it was something she did not want to do, and Terry had said too bad.

Q. Well, you don't know the circumstances surrounding that?

A. I don't remember.

Q. Okay.

A. If I would have known this was coming along I would have taken notes.

Q. Okay, Barb. So is there anyone else that you know that Terry treated this way or similar to the way he treated you with making up time?

A. No, but I can -- I know the one person that you ought to be talking to and asking would be the appointments setter, because she would have been making the appointments.

Q. Okay. But I'm not taking her deposition. I'm taking yours.

A. I don't remember.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison St., Suite 2800
Chicago, IL 60661
PH: (312) 353-2713
TDD: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168
LEGAL FAX: (312) 353-8555

Barbara J. Kendell
504 W. High Street
Peoria, IL 61606

Re: Charging Party: Barbara J. Kendell
Respondent: American Income Life of Chicago/
American Income Life Insurance Company
EEOC Number: 210A202292

Dear Ms. Kendell:

Attached please find a Notice of Right to Sue issued on your behalf in the above referenced matter. The Commission's efforts to conciliate this matter with respondent(s) have been unsuccessful. The Commission has determined that it will not bring a lawsuit against the respondent(s). By issuing the attached Notice of Right to Sue, the Commission is terminating its processing of your charge.

The attached Notice of Right to Sue entitles you to pursue private litigation concerning your allegations against respondent(s) within 90 days of your receipt of this letter. You may wish to retain a private attorney at this time. The Commission maintains a list of attorneys who have indicated an interest in pursuing cases involving employment discrimination. The list is attached for your convenience.

→ If you do file suit based on this Notice of Right to Sue, it is requested that you provide us with a copy of the complaint you file in court.

On behalf of the Commission:

2/27/2004
Date

John P. Rowe
John P. Rowe
District Director

Enclosures

Plaintiff Exhibit 8

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE -- TITLE VII / ADA/ADEA

(Conciliation Failure)

To: Barbara J. Kendell
504 W. High Street
Peoria, IL 61606

Certified: 7001 0360 0000 0463 4406

☐ *On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 C.F.R. 1601.7(a))*

From:

Equal Employment Opportunity Commission
Chicago District Office
500 West Madison Street, Suit 2800
Chicago, IL 60661-2511

| *Charge Number* | *EEOC Representative* | *Telephone Number* |
|---|---|---|
| 210A202292 | Carol Milazzo | (312) 353-7453 |

( See the additional information attached to this form )

The Commission has found reasonable cause to believe that your charge of employment discrimination is true but has not entered into a conciliation agreement to which you are a party because attempts to achieve such a voluntary settlement with respondent(s) have been unsuccessful.

The Commission has determined that it will not bring a civil action against the respondent(s) and accordingly is issuing this Notice of Right to Sue. With the issuance of this Notice the Commission terminates its process with respect to your charge, except that the Commission may seek status as intervenor if you decide to sue on your own behalf as described below.

If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. IF YOU DECIDE TO SUE, YOU MUST DO SO WITHIN NINETY (90) DAYS FROM YOUR RECEIPT OF THIS NOTICE OF RIGHT TO SUE: OTHERWISE YOUR RIGHT TO SUE IS LOST.

Your suit may include any allegation contained in your charge of employment discrimination or any matter which was or should have been discovered by the Commission during its investigation of your charge.

On Behalf of the Commission

2/27/2004

John P. Rowe

John P. Rowe, District Director

Enclosures
Information sheet
Copy of Charge

cc: Respondent(s) American Income Life of Chicago
American Income Life Insurance

EEOC Form 161-A (Test 10/94)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

AGENCY: [ ] FEPA [X] EEOC

CHARGE NUMBER: 210A202292

Illinois Dept. of Human Rights and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Barbara J. Kendell | (309) 673-7112 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 504 W. High St., | Peoria, IL 61606 | 01/07/1943 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| American Income Life Of Chicago | Cat A (15-100) | (800) 707-0902 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 900 S. Frontage, | Woodridge, IL 60517 | 043 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[ ] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[ ] RETALIATION [X] AGE [X] DISABILITY [ ] OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
*EARLIEST* 07/31/2001 *LATEST* 07/31/2001
[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I began employment at Respondent on September 25, 1998 as an insurance agent. The last position held was supervising agent. Throughout my employment, the other female employees and I were subjected to abusive language by the managing general agent. I was subjected to negative age-based remarks by the managing general agent. When I informed him that I had a disability, in or about December of 2000, and requested a reasonable accommodation, he ignored my request and began forcing me to work under conditions that aggravated my disability. Male agents were offered bonuses to work on Sundays whereas female agents were not. On May 31, 2001, I was wrongfully discharged.

I believe I have been discriminated against on the basis of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, and on the basis of disability and retaliation, in violation of the Americans with Disabilities Act of 1990. I also believe I have been discriminated against on the basis of my age, 59, (d.o.b. 01-07-1943), in violation of the Age Discrimination in Employment Act of 1967.

APR 25 2002

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date 4-20-2001 Charging Party (Signature) Barbara Kendell

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Month, day and year)

EEOC FORM 5 (Rev. 07/99)

FILE COPY

# THE EXHIBITS FROM THE DEPOSITION OF BARBARA ELIZABETH JOHANNSEN KENDELL

## TAKEN ON MARCH 4, 2005

## IN THE MATTER OF:

## BARBARA J. KENDELL
## vs.
## AMERICAN INCOME LIFE OF CHICAGO and AMERICAN INCOME LIFE INSURANCE COMPANY

## Case No.: 04-1140

*MILES REPORTING COMPANY*
*Certified in Illinois and Missouri*
*1339 North 17th Street, Suite 102*
*Belleville, Illinois 62226*
*(618) 235-2633*
*FAX (618) 235-2641*

*Reported by: Darlene Niemeyer, CSR, RPR, CCR*
*Illinois CSR License No.: 084-003677*
*Missouri CCR License No.: 866*

Plaintiff's Exhibits 9, 10



AT-A-GLANCE

2001

DEFENDANT'S DEPOSITION EXHIBIT 4 (Group) 3-4-05 DN

PENGAD 800-631-6989

Plaintiff Exhibit 9

Pam Dosbaker H. Moms Co.
Representative
402 467 6144
Fx 6276
here# 1-877 546 3176
option # 2

month AT-A-GLANCE
2001

10-26-2001
10-20-2000
2-2-16-01

For
planning,
appointments
and memoranda
on a monthly
basis

AT-A-GLANCE®
© 1999 The AT-A-GLANCE Group
Sidney, NY 13838
Made in U.S.A.

1st Copied

# JANUARY 2001

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
| | 1 NEW YEAR'S DAY | 2 NEW YEAR'S BANK HOLIDAY (SCOTLAND) | 3 | 4 | 5 Belleville 187 mile | 6 Belleville Ave 76 miles |
| 7 | 8 Belleville Ave 102 mi | [illegible] Capit. Spring | 10 Belleville Ave 95 miles | 11 Belleville Ave 93 miles | 12 | 13 |
| 14 | 15 MARTIN LUTHER KING, JR. DAY (US) 11 Jnd 5:30 Cat | 16 Decatur 247 mile | 17 Decatur 232 mi | 18 4pm - Tyson Cre. | 19 Marc 185 miles | 20 [illegible] |
| 21 Danville 230 | 22 Jnd | 23 | 24 CHINESE NEW YEAR | 25 9:30 [illegible] Dow-Davis [illegible] | 26 AUSTRALIA DAY (AUSTRALIA) | 27 |
| 28 [illegible] | 29 11 Jnd | 30 | 31 → | Wed 3pm 1/1/04 - Trenton & Lois Thomas #4846163<br>300 Devonshire - Wood 4444958<br>4pm Kandy Knoblach #4638399<br>1304 Jefferson 4204<br>Washington 444 7497<br>6pm Cotton Lucille & Willis - #567 5630<br>190 Ten Mile Creek E Peo 694 6178 | | |

December 2000

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24/31 | 25 | 26 | 27 | 28 | 29 | 30 |

January 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

February 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | | | |

March 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

April 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

May 2001

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

SUNDAY
MONDAY
TUESDAY
WEDNESDAY
WAITANGI DAY (NEW ZEALAND)
LINCOLN'S BIRTHDAY (US)
VALENTINE'S DAY
PRESIDENTS' DAY (US)
ASH WEDNESDAY

FEBRUARY 2001
THURSDAY
FRIDAY
SATURDAY
WASHINGTON'S BIRTHDAY (US)

MARCH 2001

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
| Call Eddy Garcia 923 girlfriend Lyra | | 5661 apts 1346 Schumacher | | 1 1:00 Jabby 278 | 2 10:30 NAILS 53 | 3 187 |
| 4 | 5 1 Dre [illegible] | 6 10:00 [illegible] Nails Noon [illegible] | 7 | 8 3pm [illegible] [illegible] 324 | 9 Donald | 10 193 Decatur |
| 11 Danville 198 | 12 1 Dre [illegible] | 13 Springfield 203 | 14 Charlie 10AM 214 Decatur | 15 2:30 Eddie Decatur 203 | 16 194 Decatur | 17 ST. PATRICK'S DAY (IRELAND, UK) El Paso [illegible] 138 |
| 18 | 19 CANBERRA DAY (AUSTRALIA) 11 Dre 5:30 Dre | 20 Hair 10AM Decatur 192 | 21 11:00 [illegible] 2159 [illegible] 2173335659 Decatur 181 | 22 Decatur 210 | 23 [illegible] Danville 268 | 24 Springfield 211 |
| 25 MOTHERING SUNDAY (UNITED KINGDOM) Sue BD | 26 Mom [illegible] Decatur [illegible] | 27 [illegible] 11:30 Nails [illegible] | 28 11:00 9:10pm Hair Jabby | 29 [illegible] 11-at Sue [illegible] | 30 10 Charlie | 31 |

| February 2001 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | | | |

| March 2001 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| April 2001 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

| May 2001 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| June 2001 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| July 2001 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

SUNDAY
MONDAY
TUESDAY
WEDNESDAY
DAYLIGHT SAVING TIME begins (US)
EASTER SUNDAY
EASTER MONDAY (A, C, I, NZ, UK)
ANZAC DAY (A, NZ)
PROFESSIONAL SECRETARIES DAY (US)

APRIL 2001
THURSDAY
FRIDAY
SATURDAY
GOOD FRIDAY
NATIONAL DAY OF MOURNING (CANADA)
March 2001
April 2001
May 2001
June 2001
July 2001
August 2001

# MAY 2001

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
| | | 1 [illegible] | 2 [illegible] 11 AM [illegible] Warsaw | 3 Calona [illegible] Hamilton [illegible] 223 | 4 11 Nails Sullivan 232- | 5 [illegible] 178 |
| 6 [illegible] 168 | 7 MAY DAY BANK HOLIDAY (IRELAND, UNITED KINGDOM) [illegible] 415 | 8 | 9 | 10 4 pm [illegible] | 11 9 AM [illegible] | 12 |
| 13 MOTHER'S DAY (C, US) | 14 | 15 CANADA CENSUS [illegible] 3245 Broadway [illegible] 11 AM 103 Miles from Peoria | 16 | 17 | 18 # Nails | 19 ARMED FORCES DAY (US) |
| 20 [illegible] 197 | 21 VICTORIA DAY (CANADA) [illegible] | 22 | 23 Calona 20 [illegible] | 24 | 25 465 Indianapolis [illegible] | 26 |
| 27 [illegible] 32 Miles [illegible] | 28 MEMORIAL DAY, OBSERVED (US) SPRING BANK HOLIDAY (UNITED KINGDOM) [illegible] | 29 [illegible] | 30 9:30 [illegible] 3:30 pm | 31 [illegible] | [illegible] | [illegible] |

**April 2001**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

**May 2001**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

**June 2001**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

**July 2001**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

**August 2001**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

**September 2001**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23/30 | 24 | 25 | 26 | 27 | 28 | 29 |

SUNDAY
MONDAY
TUESDAY
WEDNESDAY
3
4
HOLIDAY (IRELAND)
5
6
11AM
10
11
12
13
CAC
17
FATHER'S DAY (C, UK, US)
18
19
10 AM
Scott E open
Received letter
20
Waco
Received letter
24
ST. JEAN BAPTISTE DAY (QUÉBEC)
25
26
27
11:00 AM
4pm

JUNE 2001
THURSDAY
FRIDAY
SATURDAY
1
2
8
9
14
FLAG DAY (US)
340 Knox Hwy 37
15
11AM
CAC
16
21
22
23
28
11:30
29
30
CAC
May 2001
June 2001
July 2001
August 2001
September 2001
October 2001

To Sandy in Bow Week of 9th for meeting

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY |
|---|---|---|---|
| 1 CANADA DAY (CANADA) | 2 | 3 | 4 INDEPENDENCE DAY (US) |
| 8 2pm Holiday Inn - Brandy Wirth | 9 Oakonzyme 1:30/CAE 111 NE Jefferson 676 8464 | 10 4pm CAE Pat's meeting | 11 Mom B-Day |
| 15 Tyson | 16 | 17 | 18 ~~Nate 10AM~~ |
| 22 | 23 Dr. Miester 2pm - CAE Board 5:30 | 24 | 25 10:AM Hair 3"w. to Spm CAE 4:15 Meister |
| 29 | 30 | 31 Stubblefield 3:10 pm 9:58 | |

1:04-cv-01140-JBM-JAG # 71-2 Page 30 of 30

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY |
|---|---|---|---|
| | | | 1 |
| 5 | 6 CIVIC HOLIDAY (CANADA) BANK HOLIDAY (IRELAND) | 7 [illegible] | 8 Nails 10:30 [illegible] 10 AM 677 3513 [illegible] 4441 9687 |
| 12 | 13 Called Becky - told her we'll [illegible] | 14 10 AM Gabby Curt got her Order | 15 |
| 19 | 20 Becky - ATL Won't reopen - "Tough" - she will see what she can do | 21 Becky out left message | 22 10 AM [illegible] |
| 26 | 27 SUMMER BANK HOLIDAY (UNITED KINGDOM) Aunt Judy 9:20-one | 28 | 29 |

AUGUST 2001
THURSDAY
FRIDAY
SATURDAY
2
3 10AM CAC
4
9 [illegible] 10 AM
10 Rody 10:00 Am.
11
16 Becky [illegible]
17
18
23 11 AM - Hair
B out left message
want to go to N[illegible]
24 2:30 Nails
25
30 CPN associates
Lori Patchet
101 Wilshire Ct
East Peoria 61611
699 1467
called Benasse
31
July 2001
S M T W T F S
1 2 3 4 5 6 7
8 9 10 11 12 13 14
15 16 17 18 19 20 21
22 23 24 25 26 27 28
29 30 31
August 2001
S M T W T F S
1 2 3 4
5 6 7 8 9 10 11
12 13 14 15 16 17 18
19 20 21 22 23 24 25
26 27 28 29 30 31
September 2001
S M T W T F S
1
2 3 4 5 6 7 8
9 10 11 12 13 14 15
16 17 18 19 20 21 22
23/30 24 25 26 27 28 29
October 2001
S M T W T F S
1 2 3 4 5 6
7 8 9 10 11 12 13
14 15 16 17 18 19 20
21 22 23 24 25 26 27
28 29 30 31
November 2001
S M T W T F S
1 2 3
4 5 6 7 8 9 10
11 12 13 14 15 16 17
18 19 20 21 22 23 24
25 26 27 28 29 30
December 2001
S M T W T F S
1
2 3 4 5 6 7 8
9 10 11 12 13 14 15
16 17 18 19 20 21 22
23/30 24/31 25 26 27 28 29