**E-FILED**
Monday, 26 September, 2005  10:17:50 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

BARBARA J. KENDELL, )
)
        Plaintiff, )
)
vs. )     Case No. 04-1140
)
AMERICAN INCOME LIFE OF )
CHICAGO and AMERICAN INCOME )
LIFE INSURANCE CO., )
)
        Defendants. )

### AFFIDAVIT OF DEBBIE GAMBLE

    Debbie Gamble personally appeared before the undersigned Notary Public and, after being duly sworn, states and deposes as follows:

    1.    I am over the age of 21, under no legal disability and am competent to testify.

    2.    I have personal knowledge of the information contained in this Affidavit.

    3.    I am the Senior Vice President of American Income Life Insurance Company ("AIL"), headquartered in Waco, Texas.

    4.    AIL is licensed to sell insurance in forty-nine (49) states and it's subsidiary National Income Life Insurance Company is licensed in New York.

    5.    AIL's main marketing niche is providing supplemental health and life insurance products to members of labor unions, credit unions and associations.

    6.    AIL invests substantial time and money in creating and maintaining the client database system.

    7.    On or about September 25, 1998, Barbara J. Kendell entered into a contract with AIL to sell insurance on behalf of AIL.

*Plaintiff Exhibit 10*



8.    Ms. Kendell's contract contained a provision which prevented her, in the event of termination of the contract, from attempting to induce AIL policy holders to terminate their policies.

9.    Ms. Kendell sold insurance on behalf of AIL for approximately 2 ½ years.

10.    Based upon information and belief, AIL sent an official termination letter to Ms. Kendell, confirming that her agent contract was terminated, effective July 31, 2001. *Copy of Termination Letter attached hereto as Exhibit A.*

11.    On or about August 26, 2002, AIL received a "Notice of Possible Replacement by Another Insurance Company," informing AIL that Ms. Kendell was attempting to replace Miladefina O. Senecal's AIL policy with a policy from Federal Life Insurance Company (Mutual). *Copy of "Notice" attached hereto as Exhibit B.*

12.    On or about November 6, 2002, AIL received a "Notice of Possible Replacement by Another Insurance Company," informing AIL that Ms. Kendell was attempting to replace Mark C. Hodge's AIL policy with a policy from Federal Life Insurance Company (Mutual). *Copy of "Notice" attached hereto as Exhibit C.*

13.    On or about November 14, 2002, AIL received a "Notice Regarding Proposed Replacement of Life Insurance or Annuity," informing AIL that Ms. Kendell was attempting to replace James E. Hockman's AIL policies with policies from Federal Life Insurance Company (Mutual). *Copy of "Notice" attached hereto as Exhibit D.*

14.    On or about January 15, 2003, AIL received a "Notice Regarding Proposed Replacement of Life Insurance or Annuity," informing AIL that Ms. Kendell was attempting to replace Judith E. Hockman's AIL policies with policies from Federal Life Insurance Company (Mutual). *Copy of "Notice" attached hereto as Exhibit E.*

2

15.     On or about November 17, 2002, AIL received a "Notice of Possible Replacement by Another Insurance Company," informing AIL that Ms. Kendell was attempting to replace Dawn A. Callear's AIL policy with a policy from Federal Life Insurance Company (Mutual). *Copy of "Notice" attached hereto as Exhibit F.*

16.     On or about November 20, 2002, AIL received a "Notice of Possible Replacement by Another Insurance Company," informing AIL that Ms. Kendell was attempting to replace John L. Callear's AIL policy with a policy from Federal Life Insurance Company (Mutual). *Copy of "Notice" attached hereto as Exhibit G.*

17.     On or about May 9, 2003, AIL received a "Notice of Proposed Replacement of Life Insurance or Annuity," informing AIL that Ms. Kendell was attempting to replace Jay De Valkenaere's AIL policy with a policy from Federal Life Insurance Company (Mutual). *Copy of "Notice" attached hereto as Exhibit H.*

18.     On or about June 17, 2003, AIL received a "Notice Regarding Proposed Replacement of Life Insurance or Annuity," informing AIL that Ms. Kendell was attempting to replace Kevin G. Brummitt's AIL policy with a policy from Federal Life Insurance Company (Mutual). *Copy of "Notice" attached hereto as Exhibit I.*

Further Affiant sayeth not.

_____
DEBBIE GAMBLE

SUBSCRIBED AND SWORN to before me this ___8th___ day of __July__,
2005.

_____
Notary Public

My Commission Expires: ___03-11-2009___



RHONDA YORK
Notary Public
STATE OF TEXAS
My Commission
Expires 03/11/2009

3

 **AMERICAN INCOME LIFE INSURANCE COMPANY**
Executive Offices:  P. O. Box 2608, Waco, Texas  76797
Visit our website at www.ailins.com, send e-mail to contactus@ailins.com
or call (254) 761-6400 or 1-800-433-3405

August 5, 2001


Barbara J Kendell
504 W High St Upper Level
Peoria IL  61604




We have been notified of your termination and have adjusted our records
to show the effective date of 07/31/2001. If you have company materials,
please return them to the agency.


If you were licensed in SOUTH CAROLINA or WYOMING, please return your
license to us as soon as possible.  We are required to return licenses
to those states.


We wish you success in the future.


*Tania Donaldson*

Tania Donaldson
Assistant Vice President
Agency Administration






AA/CEP AG     AATRCN

June 14, 2001

Becky Turner
Office & Professional Employees International Union
641 N. Cherry Lane
Ft. Worth, TX 67108

Dear Ms. Turner,

Pursuant to our telephone conversation on June 11, 2001, I am filing a grievance against my MGA at American Income Life Insurance Company, Terrance Brennan, 400 N.E. Jefferson, Suite 107, Peoria Illinois 61603. I don't know if this would include my SGA Scott Smith; 5509 Belmont Road, Downers Grove, Illinois 60505 or not. However I will be sending Scott Smith a copy of this letter.

For months I have been working in a hostile working environment due to Terry's bad attitude. Our relationship has not been harmonious nor equitable.

I am an independent contractor. I receive a 1099 Miscellaneous, not a W2. According to I.R.S.'s form SS8, Determination of Worker Status, etc., I am treated as a statutory employee (see enclosure).

I have a medical problem that requires surgery (see attached). Terry told me when I told him last fall that I would need a two to three month leave of absence that I couldn't have that much time; that he would either fire me or I should just quit.

Terry practices sexual discrimination by offering the male agents bonuses for working on a Sunday. He doesn't do this for the female agents. The last time that I know this happened was on May 20, 2001.

I am giving some background to bring you up to date on the current problem:

On Tuesday, May 29, 2001, Terry Brennan called me into his office. He told me that our appointment setter, Sue Vazquez, had told him that I refused to work on Sunday, May 27, 2001 and on Monday, May 28, 2001. (Terry expects an agent to work five to seven days a week.) If you have to take a personal day off, you either have to make it up or endure one of his tirades.) Terry had told me I would work both days because on May 28, 2001 I missed work because I had to take my fiance, Curtis L. Frazier, M.D. to Indianapolis, Indiana for a cat scan at the V.A. hospital. (Curt has cancer of the hypopharynx that has metastasized to the lymph nodes.)

I told Terry that what Sue told him was not true. I told Terry that I had said to Sue that while I really didn't want to work the holiday weekend that I would work any appointments that she set. I told her that I had told Terry that I would start at noon on Sunday, because of church in the morning, and anytime on Monday. I knew from past experience that Sue doesn't like to work holiday weekends. I doubted that I would get any appointments at all because I knew she was going to her boyfriend, Steve's, for the weekend. Sue made two appointments for me on Friday night for Sunday and told me, "tongue in cheek" that she wasn't able to set any for Monday. I told Sue don't worry about it, I'd rather spend what time I could with Curt because he is to start a seven week, in hospital, chemo and radiation therapy. I had only agreed to work because Terry had demanded it. I also told Terry that none of the agents had been scheduled for Tuesday, May 29, 2001. Terry didn't know that we didn't have any appointments for this evening. I knew because Sue had told me she didn't work. When Sue got to the office he called both of us into his office. I repeated the above and after hedging, Sue finally admitted that she had lied. After trying to get Sue to change the fact of her lying, she did not, he apologized to me and I left his office.

Plaintiffs Exhibit 11a & 11b
11

After I left he continued to try and get Sue to change her story about lying. The walls are thin and Terry has a loud voice. I heard him tell her, "I want her out of here! Why did you back her up? I know that she is scamming me. She is a trouble maker. I had her and you let her off the hook. If you would quit setting leads for he she'll be out of here." When everyone had left the office, Terry told me that I was a lying trouble maker. That I was just a bitch out to stab him in the back. He said he didn't believe that I had a medical problem with my leg and that Curt didn't have cancer and that we never went to Indianapolis. I asked him what our office fax number was because I would have my doctor fax my medical records to him. He said he didn't want them because they would just be a lie. I told him that he had a problem and I left the office.

On Tuesday or Wednesday I spoke, by phone, with Sue because of problems with my appointments. She didn't set my Wednesday appointment until Wednesday afternoon. I got the fax at 3:30 p.m. and the first appointment was at 4:00 p.m. On Thursday she "forgot" to fax the schedule until I called her. I told her that I had spoken with Linda Haynes-Jackson, an ex-agent, to see how her mother was doing. Linda told me that she had answered a questionnaire that the home office sends out to all agents who have quit. Linda told me that she wrote that the reason that she quit was because Terry was a bully and if it hadn't been for me she wouldn't have had any training before being sent out on her own. I told Sue that while Linda meant well, when Terry got a copy of this letter; there have been several letters from ex-agents stating the same thing; he would land on me again and that I was tired of being his "scapegoat." Sue apparently told Terry about the letter.

On Thursday, May 31, 2001, Terry Brennan called me on my cell phone while I was working and accused me of writing Linda's letter to the home office, that was derogatory to him. He accused me of stabbing him in the back with Waco and Chicago. He was abusive and slanderous in his language. He said that Chicago had wanted to have him "get rid of me" since we had the problem of Terry's treatment of my agent Gordon Tinsman for the past six months but that he had done everything he could do to keep me. Terry and Sue's treatment and sabotage of Gordon is another story. Terry called me a bitch liar, back stabber and a trouble maker. *He fired me!*

I called Steve DeKlerk, Chicago office manager, told him what Terry had said and that he had fired me. I told Steve that I had asked Terry if he wanted me to finish my appointments and that he had said he didn't give a fuck what I did with the fucking appointments. I asked Steve what to do. He said "go sell something." (I did.) He questioned if Terry had the authority to fire me. I said I would call Bob Olsen in the morning. Steve said to call Monday because both Bob and Scott were in Cancun, Mexico.

On Monday or Tuesday I called Bob and told him what happened. He said he would call me back. He didn't. On Thursday, June 7, 2001, I called Bob to see if I was fired or not. He said he didn't know, that Terry had called Scott Smith and that they were to speak on the phone for the second time and that he would call me back. He didn't. On Monday, June 11, 2001, I called Bob. He said that Scott would be in Peoria on Tuesday for a meeting between Scott, Terry and me to iron out our differences.

On Tuesday, June 12, 2001, I met with Scott Smith in the Peoria office. Terry was not there. Scott said that Sue had changed her story again and that I had told her that I wouldn't work the Memorial Sunday or Monday. I told him that this was not true. Scott also asked me if I had coerced any ex-agent into filling out A.I.L.'s questionnaire in a negative manner. I said I had not. Scott said that he had called several ex-agents and asked me again if I had told them to send in a negative report. Again, I said I had not done so. Scott told me that he would always back Terry in a dispute because Terry had always been there for Scott running the Peoria office when Scott needed a manager in Peoria. Scott said that it was Terry's decision whether or not I had a job. He suggested that I call Terry requesting that I retain my job.

He said he would then call Terry and that he would get back with me on Wednesday with his decision.

I called Terry on his cell phone Tuesday night and told him that I didn't think the meeting with Scott had gone in my favor and asked Terry to intercede for me. Not once did Terry mention to me that Sue had changed her story about the Memorial weekend. He was just angry over Linda's letter. Again he said that I had stabbed him in the back for the last time and it was up to Scott to make the decision on keeping me as an employee. He said he would call Scott and that Scott would get back to me.

It is now Friday, June 15, 2001 and I haven't heard from either one. So far I have cancelled two appointments to sell several policies (they were re-schedules) and two appointments to re-instate two lapsed policies because I don't know if I am employed.

When I met with Scott I had also asked him that if I still had my job if my appointments could be set in the Chicago phone room since I don't trust Sue to set me valid appointments and because Chicago charges all of the agents in Peoria $40.00 a week for the Chicago phone room fees. Scott said no. I then asked him if I could set my own appointments. He evaded a direct yes or no but said he didn't think that was feasible.

Sincerely,

Barbara J. Kendell

Barbara J. Kendell
504 W. High Street, Upper Level
Peoria, IL 61606-1923
(309) 673-7112

cc:  Scott Smith
cc:  Roger Smith

June 15, 2001

Dear Mr. Smith,

I am enclosing a letter that I am sending OPEIU Local 277.

I am sorry to have to do this. I really like working for AIC. I am a good agent for the company. I have been working under the most trying of circumstances. I am the only agent who has stayed in the Peoria, Illinois office working for Terry Brennan. None of the ex-agents can understand how I have been able to put up with him this long. You should speak with any of them, especially the ones who have left in the past year or year and a half. My grievance doesn't even cover half of what is wrong in the Peoria office.

Before going into insurance I was the Administrator of a large medical clinic in Peoria. I had between 15 to 20 employees. It is not lack of experience in management that leads me to say that Terry is an ineffective manager.

Would you please send me a copy of my employment personnel file. I will pay for the expense incurred in copying it.

Sincerely,
Barbara Kendell
504 W. High Street - Upper Level
Peoria Il. 61606-1923
309 623 7112

Plaintiff's Exhibit 11b



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison St., Suite 2800
Chicago, IL 60661
PH: (312) 353-2713
TDD: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168
LEGAL FAX: (312) 353-8555

EEOC Charge Number 210A202292

Barbara J. Kendell                                    Charging Party
504 W. High Street
Peoria, Il. 61606

     vs.

American Income Life of Chicago                       Respondent
900 S. Frontage
Woodridge, Illinois.  60517

     and

American Income Life Insurance Company
P.O. Box 2608
Waco, Texas. 76797

DETERMINATION

Under the authority vested in me by the Procedural Regulations of the Equal Employment
Opportunity Commission (EEOC), I issue the following determination on the merits of the subject
charge filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII), the Age
Discrimination in Employment Act of 1967 (ADEA) and the Americans With Disabilities Act of
1990, (ADA).

The Respondent(s) is an employer within the meaning of Title VII, the ADA and the ADEA and all
requirements for coverage have been met.



Charging Party alleges she and other females were discriminated against based on sex, female, in
that females were subjected to abusive language by the Managing General Agent, in violation of
Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to
believe  Respondent subjected  a class  of females, including  Charging Party, to profiling in
violation of Title VII.

*Plaintiff's Exhibit #12*

EEOC Charge Number 210A202292
Page 2 of 3

Charging Party alleges she was subjected to ageist remarks in violation of the ADEA.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe Respondent subjected Charging Party to ageist remarks in violation of the ADEA.

Charging Party alleges Respondent was aware of her disability and she was denied a reasonable accommodation in violation of the ADA.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe Respondent denied Charging Party a reasonable accommodation in violation of the ADA.

Charging Party alleges males were compensated for working Sundays whereas females were not, in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that a class of females, including Charging Party, were not compensated for working Sundays, in violation of Title VII.

Like and related to the charge the evidence obtained in the investigation also establishes reasonable cause to believe a class of females, including Charging Party were subjected to disparate treatment in regard to assignments, not being compensated for training new agents, and by not being compensated for overnight accommodations, in violation of Title VII.

Like and related to the charge the evidence obtained in the investigation establishes reasonable cause to believe Charging Party was terminated in retaliation for engaging in protected activities under Title VII, the ADEA and the ADA.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information obtained during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26).

If the Respondent wishes to accept this invitation to participate in conciliation efforts, it may do so at this time, by proposing terms for a conciliation agreement; that proposal should be provided to the Commission representative within 14 days of the date of this determination. The remedies for violations of the statutes we enforce are designed to make the identified victims whole and to provide corrective and preventive relief. These remedies may include, as appropriate, an agreement by the Respondent not to engage in unlawful employment practices, placement of victims in positions they would have held but for the discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

EEOC Charge Number 210A202292
Page 3 of 3

Should the Respondent have further questions regarding the conciliation process, or the conciliation terms it would like to propose, we encourage the Respondent to contact the assigned Commission representative. Should there be no response from the Respondent in 14 days, we may conclude that further conciliation efforts would be futile or nonproductive.

On Behalf of the Commission

_9-26-03_
Date

John P. Rowe
District Director

01/27/99    09:35    ☎254 751 6639    AMERICAN INCOME  +++ KNAPICK MIKE IL    ☒001

# American Income Life
## Insurance Company

### P. O. Box 2608   Waco, Texas 76797

## GENERAL AGENT CONTRACT

### OBLIGATIONS OF GENERAL AGENT

The General Agent agrees:
(a) To obtain, supervise, train and assist Agents.
(b) To be responsible for the acts and obligations of Agents coded to the General Agent, including: 1) All money collected by Agents, 2) All money advanced to Agents by the Company, (except that 57½% General Agents shall not be responsible for advances to agents) and 3) All liability of Agents to the Company.
(c) To use all business records, policyholder records, and records of leads, prospects or memberships of organizations, only for the business purposes of the Company, to hold such records in confidence, to recognize that such records are the property of the Company whether paid for or created by the efforts of the Company, the Agency, the General Agent, an Agent or any other person, and to surrender such records to the Company upon request without retaining copies.
(d) To submit all applications for insurance promptly to the Company, and to no other Company.
(e) To never attempt to induce representatives of the Company to end their relationship with the Company, or to breach their contract with the Company.
(f) To never attempt to induce policyholders with the Company to terminate their policies.
(g) To advise the Company in writing whenever the General Agent is or becomes a representative of another insurance company.
(h) To take no action or make any statement that is injurious or harmful to the Company, its business, or its reputation.

### LIMITATION OF AUTHORITY

The General Agent does not have authority to:
(a) Obligate the Company except by the terms of the insurance application
(b) Alter the terms of any policy or contract of the Company.

### ADVANCES, BALANCES

The Company may make advances against commissions to be earned. Such advances shall be added to the account balance of the General Agent. The balance of the account will bear interest at the rate of prime less 2%, changed monthly as necessary, not to exceed 10%. The General Agent shall be responsible for the payment in full of such balance, whether or not it appears that future commissions will be sufficient to pay such balance.

### ADVANCES, SECURITY INTEREST, REMEDIES

The Company is granted a security interest in all commissions earned and any proceeds thereof to secure amounts advanced and to secure all other obligations to the Company. The Company may set-off any amounts due the General Agent. The Company's right of recoupment shall enable the Company to apply any future commissions earned against the account balance until paid in full, regardless of whether this Agreement has been terminated.

### COMMISSIONS

Commissions are determined by the schedule in effect at the time the insurance is issued. There are no commissions on premiums that are waived, or on extra premiums for hazards or physical conditions. Commissions are earned on premiums paid. Commissions are credited monthly. Commissions earned shall be applied first to pay the interest accrued on the account, then to pay expenses charged to the account, then to principal. Commissions earned after termination will be credited to the General Agent if:
(a) The General Agent has represented the Company in such capacity for one year; and
(b) The termination of the General Agent was not for cause; and
(c) There has been no breach of this contract by the General Agent.

AG-2022 (R997) GA                    Page 1

AGENCY   APR 21 1998

Plaintiffs Exhibit #13

Brennan1

01/27/98   09:36   ☎254 751 8639     AMERICAN INCOME ⟶ KNAPICK MIKE - IL     @002

## TERMINATION

Either party may terminate this contract for non-performance of any material element, or if the other party violates any applicable law, insurance code, or regulation. Either party may terminate this contract without cause by giving 30 days notice. Notice of termination is effective if mailed to the last known address of the other party.

After termination the General Agent will never use policyholder records, union or credit union membership records, or other business records concerning the business of the Company, including, but not limited to, lead return cards, policyholder lists, computer disks or other storage media, no matter how or when obtained, and whether prepared by the Company, the Agency, the General Agent, or any other person, for the purpose of soliciting the sale or replacement of insurance by the General Agent or by others. All such records will be returned to the Company, without retaining copies.

After termination, the General Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or in any other way to injure the business or reputation of the Company.

## RELATIONSHIP

The General Agent is not an employee of the Company. The General Agent has no fixed hours and is free to choose the time and manner in which services are performed. The General Agent shall not represent or imply that the General Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company. The General Agent will not be treated as an employee with respect to services performed under this contract for federal and state tax purposes.

## REQUIREMENT OF WRITING

All agreements must be in writing. No promise or understanding shall be enforceable unless made in writing.

This contract is signed and is effective ___*April 13*___ 19 *98*

                                                                    *T M Brennan*
                                                                    (General Agent)

**HIERARCHY INSTRUCTIONS**
**PLEASE PRINT**

| LEVEL | CONTRACT PERCENT | NAME |
|-------|------------------|------|
| SGA:  | *100%*           | *Scott Smith* |
| MGA:  | *65%*            | *Roger Harris* |
| GA:   |                  |      |
|       |                  |      |
| GEN AGT: | *57½*         | *Brenal* |

                                                    *All of Chicago*
                                                    (Agency)

                                                    By ___*Scarn*___

**COMMISSION SCHEDULE INSTRUCTIONS**
- ☐ 70%
- ☐ 65%
- ☐ 62.5%
- ☐ 57.5%
- ☐ OTHER, SPECIFY___

AMERICAN INCOME LIFE INSURANCE COMPANY ...

By ___*Debbie Hamill*___

TERRANCE M BRENNAN
75192        SSBD

                    ALL

AG-2022 (R997) QA                              Page 2

                              AGENCY   APR 21 1998

Brennan2

## AMERICAN INCOME LIFE INSURANCE COMPANY
*P.O. Box 2608 Waco, TX  76797*

### GENERAL AGENT CONTRACT

### OBLIGATIONS OF GENERAL AGENT

The General Agent agrees:

(a) To obtain, supervise, train and assist Agents.

(b) To be responsible for the acts and obligations of Agents coded to the General Agent, including:

    1) All money collected by Agents,

    2) All money advanced to Agents by the Company, (except that 571/2% General Agents shall not be responsible for advances to agents) and 3) All liability of Agents to the Company.

(c) To use all business records, policyholder records, and records of leads, prospects or memberships of organizations, only for the business purposes of the Company, to hold such records in confidence, to recognize that such records are the property of the Company whether paid for or created by the efforts of the Company, the Agency, the General Agent, an Agent or any other person, and to surrender such records to the Company upon request without retaining copies.

(d) To submit all applications for insurance promptly to the Company, and to no other Company.

(e) To never attempt to induce representatives of the Company to end their relationship with the Company, or to breach their contract with the Company.

(f) To never attempt to induce policyholders with the Company to terminate their policies.

(g) To advise the Company in writing whenever the General Agent is or becomes a representative of another insurance company.

(h) To take no action or make any statement that is injurious or harmful to the Company, its business, or its reputation.

### LIMITATION OF AUTHORITY

The General Agent does not have authority to:

(a) Obligate the Company except by the terms of the insurance application

(b) Alter the terms of any policy or contract of the Company.

### ADVANCES, BALANCES

The Company may make advances against commissions to be earned. Such advances shall be added to the account balance of the General Agent. The balance of the account will bear interest at the rate of prime less 2%, changed monthly as necessary, not to exceed 10%. The General Agent shall be responsible for the payment in full of such balance, whether or not it appears that future commissions will be sufficient to pay such balance.

### ADVANCES, SECURITY INTEREST, REMEDIES

The Company is granted a security interest in all commissions earned and any proceeds thereof to secure amounts advanced and to secure all other obligations to the Company. The Company may set-off any amounts due the General Agent. The Company's right of recoupment shall enable the Company to apply any future commissions earned against the account balance until paid in full, regardless of whether this Agreement has been terminated.

### COMMISSIONS

Commissions are determined by the schedule in effect at the time the insurance is issued. There are no commissions on premiums that are waived, or on extra premiums for hazards or physical conditions. Commissions are earned on premiums paid. Commissions are credited monthly. Commissions earned shall be applied first to pay the interest accrued on the account, then to pay expenses charged to the account, then to principal. Commissions earned after termination will be credited to the General Agent if:

(a) The General Agent has represented the Company in such capacity for one year; and

(b) The termination of the General Agent was not for cause; and

(c) There has been no breach of this contract by the General Agent.

### TERMINATION

Either party may terminate this contract for non-performance of any material element, or if the other party violates any applicable law, insurance code, or regulation. Either party may terminate this contract without cause by giving 30 days notice. Notice of termination is effective if mailed to the last known address of the other party.

After termination the General Agent will never use policyholder records, union or credit union membership records, or other business records concerning the business of the Company, including, but not limited to, lead return cards, policyholder lists, computer disks or other storage media, no matter how or when obtained, and whether prepared by the Company, the Agency, the General Agent, or any other person, for the purpose of soliciting the sale or replacement of insurance by the General Agent or by others. All such records will be returned to the Company, without retaining copies.

After termination, the General Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or in any other way to injure the business or reputation of the Company.

**AGENCY**   **APR 15 1999**

Brennan3

**RELATIONSHIP**

The General Agent is not an employee of the Company. The General Agent has no fixed hours and is free to choose the time and manner in which services are performed. The General Agent shall not represent or imply that the General Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company. The General Agent will not be treated as an employee with respect to services performed under this contract for federal and state tax purposes.

**REQUIREMENT OF WRITING**

All agreements must be in writing. No promise or understanding shall be enforceable unless made in writing.
This contract is signed and is effective _____ *Apr.l 9* _____ 1999.

(General Agent) _Terry Brennan_    x _M Brennan_

(Agency) _AIL OF CHICAGO_

By _Scott Smith_

**AMERICAN INCOME LIFE INSURANCE COMPANY**

By _____ *Debbie Lamote*

| HIERARCHY INSTRUCTIONS (please print) | | |
|---|---|---|
| Level | Contract Percent | Name |
| Abent | | Merle Dillman |
| Abent | | Joe Changler |
| Abent | | Mike Brey |
| Abent | | Barara Knoell |
| Abent | | Kevin Rotter |
| | | |
| MASTR | | |
| General Agent: | 65% | Terry Brennan |
| COMMISSION SCHEDULE INSTRUCTIONS | | |
| _____ 70 % | X 65 % | _____ 62.5% |
| _____ 57.5 % | | |

*AG-2022 (R997) GA*

TERRANCE M BRENNAN
78565            SSIA

ALL

Brennan4

BRENNAN
81750

# AMERICAN INCOME LIFE INSURANCE COMPANY
P.O. Box 2608 Waco, TX 76797

## GENERAL AGENT CONTRACT

### OBLIGATIONS OF GENERAL AGENT

The General Agent agrees:

(a) To obtain, supervise, train and assist Agents.

(b) To be responsible for the acts and obligations of Agents coded to the General Agent, including:
  1) All money collected by Agents,
  2) All money advanced to Agents by the Company; (except that 57½/2⅔ General Agents and Regional General Agents shall not be responsible for advances to agents) and 3) All liability of Agents to the Company.

(c) To use all business records, policyholder records, and records of leads, prospects or memberships of organizations, only for the business purposes of the Company; to hold such records in confidence, to recognize that such records are the property of the Company whether paid for or created by the efforts of the Company, the Agency, the General Agent, an Agent or any other person, and to surrender such records to the Company upon request without retaining copies.

(d) To submit all applications for insurance promptly to the Company; and to no other Company.

(e) To never attempt to induce representatives of the Company to end their relationship with the Company, or to breach their contract with the Company.

(f) To never attempt to induce policyholders with the Company to terminate their policies.

(g) To repay the company upon demand all sums owing on the account of the General Agent, including sums charged to such account pursuant to the responsibility of the General Agent for the obligations of representatives coded to such General Agent.

(h) To take no action or make any statement that is injurious or harmful to the Company, its business, or its reputation.

(i) During the term of your contract with the Company, you shall not be licensed with or maintain a contract or appointment with any other insurance company.

### LIMITATION OF AUTHORITY

The General Agent does not have authority to:

(a) Obligate the Company except by the terms of the insurance application

(b) Alter the terms of any policy or contract of the Company.

(c) Collect Premium other than in the name of the Company.

(d) Use Advertising or printed matter other than that provided or approved by the Company.

### EXPENSES, ADVANCES, BALANCES

The Company may make advances or allow charges be made on the General Agent's account against commissions to be earned. Such advances or charges shall be added to the account balance of the General Agent. The General Agent shall be responsible for the payment in full of such balance, whether or not it appears that future commissions will be sufficient to pay such balance, irrespective of whether demand for payment has been made.

General Agent shall be responsible for all expenses incurred in the production of insurance for the Company. General Agent shall at his own expense furnish his own means of transportation, office or place of business, advertisements, form letters, letterheads, circulars, and any other relevant expenses incurred in the solicitation of insurance for the Company.

General Agent shall be responsible to Company for all loss or damage arising from business done by and entrusted to him and shall indemnify and hold Company harmless from any and all expenses, costs, causes of action, loss or damages resulting from fraudulent or unauthorized acts or omissions of General Agent. Any persons retained by the General and any agent(s) under contract with Company and assigned to him.

### ADVANCES, SECURITY INTEREST, REMEDIES

The Company is granted a security interest in all commissions earned and any proceeds thereof to secure amounts advanced and to secure all other obligations to the Company. The Company may set-off any amounts due the General Agent. The Company's right of recoupment shall enable the Company to apply any future commissions earned against the account balance until paid in full, regardless of whether this Agreement has been terminated.

### COMMISSIONS

Commissions are determined by the schedule in effect at the time the insurance is issued. There are no commissions on premiums that are waived, or on extra premiums for hazards or physical conditions. Commissions will be paid on premiums received by the company on business produced by the General Agent or any agents assigned to him by the company, less any premiums returned to the insured for any reason. Commissions earned after termination will be credited to the General Agent if:

AGENCY  JAN 18 2000

Brennan5

(a) The General Agent has represented the Company in such capacity for one year; and
(b) The termination of the General Agent was not for cause; and
(c) There has been no breach of this contract by the General Agent.
(d) At the option of the Company, payment of commissions will be held in abeyance for 180 days after contract to determine the existence of any sums due the Company which are to be set-off against commissions.

**TERMINATION**
Either party may terminate this contract for non-performance of any material element, or if the other party violates any applicable law, insurance code, or regulation. Either party may terminate this contract without cause by giving 30 days notice. Notice of termination is effective if mailed to the last known address of the other party.

After termination the General Agent will never use policyholder records, union or credit union membership records, or other business records concerning the business of the Company, including, but not limited to, lead return cards, policyholder lists, computer disks or other storage media, no matter how or when obtained, and whether prepared by the Company, the Agency, the General Agent, or any other person, for the purpose of soliciting the sale or replacement of insurance by the General Agent or by others. All such records will be returned to the Company, without retaining copies.

After termination, the General Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or in any other way to injure the business or reputation of the Company.

**DEPORTMENT**
Should the General Agent at any time, either before or after termination of his contract, wrongfully withhold any funds belonging to any applicant for insurance, a policyholder, or the Company; or should the General agent induce any policyholder to lapse, relinquish, or surrender a policy with the company; then the General Agent shall immediately forfeit his right to receive any commissions or any other compensation due or to become due, whether vested or otherwise, under this Contract or any other agreement with the Company.

**RELATIONSHIP**
The General Agent is not an employee of the Company. The General Agent has no fixed hours and is free to choose the time and manner in which services are performed. The General Agent shall not represent or imply that the General Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company. The General Agent will not be treated as an employee with respect to services performed under this contract for federal and state tax purposes.

**REQUIREMENT OF WRITING**
All agreements must be in writing. No promise or understanding shall be enforceable unless made in writing.

This contract is signed and is effective ___01 −01 −2000___ 2000.

(General Agent)

(Agency) ___M Brennan___                    TERRANCE BRENNAN

By ___All−American___

AMERICAN INCOME LIFE INSURANCE COMPANY

By ___Debbie Gamble___

AGENCY JAN 1 9 2000

Brennan6

**HIERARCHY INSTRUCTIONS** (please print)

| Level | Contract Percent | Name |
|---|---|---|
| MGA-SGA | 100 | SCOTT SMITH |
| | | |
| | | |
| | | |
| | | |
| General Agent: MGA | 65 | TERRANCE BRENNAN |

**COMMISSION SCHEDULE INSTRUCTIONS**

| 70 % | X 65 % | 62.5% |
|---|---|---|
| 57.5 % | | Regional General Agent (5% FY over MGA) |

*AG-2022 (R100) GA*

AGENCY JAN 18 2007

Brennan7

01/05/2000  15:00    309-6762379                    A I L  PEORIA                    PAGE  07

## AMERICAN INCOME LIFE INSURANCE COMPANY
P.O Box 2608 Waco, TX 76797

*Brennen*
*81750*

### GENERAL AGENT CONTRACT

**OBLIGATIONS OF GENERAL AGENT:**
The General Agent agrees:
(a)  To obtain, supervise, train and assist Agents.
(b)  To be responsible for the acts and obligations of Agents coded to the General Agent, including:
   1)  All money collected by Agents.
   2)  All money advanced to Agents by the Company, (except that 57 1/2% General Agents and Regional General Agents shall not be responsible for advances to agents) and 3) All liability of Agents to the Company.
(c)  To use all business records, policyholder records, and records of leads, prospects or memberships of organizations, only for the business purposes of the Company, to hold such records in confidence, to recognize that such records are the property of the Company whether paid for or created by the efforts of the Company, the Agency, the General Agent, an Agent or any other person, and to surrender such records to the Company upon request without retaining copies.
(d)  To submit all applications for insurance promptly to the Company, and to no other Company.
(e)  To never attempt to induce representatives of the Company to end their relationship with the Company, or to breach their contract with the Company.
(f)  To never attempt to induce policyholders with the Company to terminate their policies.
(g)  To repay the company upon demand all sums owing on the account of the General Agent, including sums charged to such account pursuant to the responsibility of the General Agent for the obligations of representatives coded to such General Agent.
(h)  To take no action or make any statement that is injurious or harmful to the Company, its business, or its reputation.
(i)  During the term of your contract with the Company, you shall not be licensed with or maintain a contract or appointment with any other insurance company.

**LIMITATION OF AUTHORITY**
The General Agent does not have authority to:
(a)  Obligate the Company except by the terms of the insurance application
(b)  Alter the terms of any policy or contract of the Company.
(c)  Collect Premium other than in the name of the Company.
(d)  Use Advertising or printed matter other than that provided or approved by the Company.

**EXPENSES, ADVANCES, BALANCES**
The Company may make advances or allow charges be made on the General Agent's account against commissions to be earned. Such advances or charges shall be added to the account balance of the General Agent. The General Agent shall be responsible for the payment in full of such balance, whether or not it appears that future commissions will be sufficient to pay such balance, irrespective of whether demand for payment has been made.

General Agent shall be responsible for all expenses incurred in the production of insurance for the Company. General Agent shall at his own expense furnish his own means of transportation, office or place of business, advertisements, form letters, letterheads, circulars, and any other relevant expenses incurred in the solicitation of insurance for the Company.

General Agent shall be responsible to Company for all loss or damage arising from business done by and entrusted to him and shall indemnify and hold Company harmless from any and all expenses, costs, causes of action, loss or damages resulting from fraudulent or unauthorized acts or omissions of General Agent.  Any persons retained by the General and any agent(s) under contract with Company and assigned to him.

**ADVANCES, SECURITY INTEREST, REMEDIES**
The Company is granted a security interest in all commissions earned and any proceeds thereof to secure amounts advanced and to secure all other obligations to the Company. The Company may set-off any amounts due the General Agent. The Company's right of recoupment shall enable the Company to apply any future commissions earned against the account balance until paid in full, regardless of whether this Agreement has been terminated.

**COMMISSIONS**
Commissions are determined by the schedule in effect at the time the insurance is issued. There are no commissions on premiums that are waived, nor on extra premiums for hazards or physical conditions. Commissions will be paid on premiums received by the company on business produced by the General Agent or any agents assigned to him by the company, less any premiums returned to the insured for any reason. Commissions earned after termination will be credited to the General Agent if:

AGENCY    JAN 06 2000

Brennan8

(a) The General Agent has represented the Company in such capacity for one year; and
(b) The termination of the General Agent was not for cause; and
(c) There has been no breach of this contract by the General Agent.
(d) At the option of the Company, payment of commissions will be held in abeyance for 180 days after contract to determine the existence of any sums due the Company which are to be set off against commissions.

## TERMINATION

Either party may terminate this contract for non-performance of any material element, or if the other party violates any applicable law, insurance code, or regulation. Either party may terminate this contract without cause by giving 30 days notice. Notice of termination is effective if mailed to the last known address of the other party.

After termination the General Agent will never use policyholder records, union or credit union membership records, or other business records concerning the business of the Company, including, but not limited to, lead return cards, policyholder lists, computer disks or other storage media, no matter how or when obtained, and whether prepared by the Company, the Agency, the General Agent, or any other person, for the purpose of soliciting the sale or replacement of insurance by the General Agent or by others. All such records will be returned to the Company, without retaining copies.

After termination, the General Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or in any other way to injure the business or reputation of the Company.

## DEPORTMENT

Should the General Agent at any time, either before or after termination of his contract, wrongfully withhold any funds belonging to any applicant for insurance, a policyholder, or the Company; or should the General agent induce any policyholder to lapse, relinquish, or surrender a policy with the company; then the General Agent shall immediately forfeit his right to receive any commissions or any other compensation due or to become due, whether vested or otherwise, under this Contract or any other agreement with the Company.

## RELATIONSHIP

The General Agent is not an employee of the Company. The General Agent has no fixed hours and is free to choose the time and manner in which services are performed. The General Agent shall not represent or imply that the General Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company. The General Agent will not be treated as an employee with respect to services performed under this contract for federal and state tax purposes.

## REQUIREMENT OF WRITING

All agreements must be in writing. No promise or understanding shall be enforceable unless made in writing.

This contract is signed and is effective    01 - 01 - 20 00           , 2000.

(General Agent)

(Agency)                                                               TERRANCE  BRENNAN

By      AIL - Chicago

AMERICAN INCOME LIFE INSURANCE COMPANY

By

TERRANCE  M  BRENNAN
86451            SSAA

                                                                       CEP

AGENCY    JAN 06 2000

Brennan9

| HIERARCHY INSTRUCTIONS (please print) | | |
|---|---|---|
| Level | Contract Percent | Name |
| MGA SGA | 100 | SCOTT SMITH |
| | | |
| | | |
| | | |
| | | |
| General Agent:  MGA | 65 | TERRANCE BRENNAN |
| COMMISSION SCHEDULE INSTRUCTIONS | | |
| 70 % | X  65% | 62.5% |
| 57.5 % | Regional General Agent (5% FY over MGA) | |

AG-2023 (RJ(0) G-1

AGENCY    JAN 06 2000

Brennan10

_Christy Parker_ 

**AMERICAN INCOME LIFE INSURANCE COMPANY**

*P.O. Box 2608 Waco, TX 76797*

### SUPERVISING AGENT CONTRACT

#### OBLIGATIONS OF SUPERVISING AGENT

The Supervising Agent agrees:

(a) To use all business records, policyholder records, and records of leads, prospects or memberships of organizations, only for the business purposes of the Company, to hold such records in confidence, to recognize that such records are the property of the Company whether paid for or created by the efforts of the Company, the Agency, the Supervising Agent, or any other person, and to surrender such records to the Company upon request without retaining copies.

(b) To submit all applications for insurance secured by the Supervising Agent promptly to the Company, and to no other Company.

(c) To never attempt to induce representatives of the Company to end their relationship with the Company, or to breach their contract with the Company.

(d) To never attempt to induce policyholders with the Company to terminate their policies.

(e) To take no action or make any statement that is injurious or harmful to the Company, its business, or its reputation.

(f) During the term of your contract with the Company, you shall not be licensed with or maintain a contract or appointment with any other insurance company.

(g) To repay upon demand all sums owing on the account of the Agent to the Company and/or General or State General Agent

#### LIMITATION OF AUTHORITY

The Supervising Agent does not have authority to:

(a) Obligate the Company except by the terms of the insurance application.

(b) Alter the terms of any policy or contract of the Company.

(c) Collect premium other than in the name of the Company.

(d) Use advertising or printed matter other than that provided or approved by the Company.

#### EXPENSES

Supervising Agent shall be responsible for all expenses incurred in the production of insurance for the Company. Supervising Agent shall at his own expense furnish his own means of transportation, office or place of business, advertisements, form letters, letterheads, circulars, and any other relevant expenses incurred in the solicitation of insurance for the Company.

Supervising Agent shall be responsible to Company for all loss or damage arising from business done by and entrusted to him and shall indemnify and hold Company harmless from any and all expenses, costs, causes of action, loss or damages resulting from fraudulent or unauthorized acts or omissions of Supervising Agent. Any persons retained by the Supervising Agent to assist Supervising Agent in the production of insurance shall be at the Supervising Agent's own expense.

#### LIEN AND SET-OFF

The Company is granted a security interest in all commissions earned and any proceeds thereof to secure amounts advanced and to secure all other obligations to the Company. The Company may set-off any amounts due the Supervising Agent against any amounts due from the Supervising Agent. The Company's right of recoupment shall enable the Company to apply any future commissions earned against the account balance until paid in full, regardless of whether this Agreement has been terminated.

#### COMMISSIONS

Commissions are determined by the schedule in effect at the time the insurance is issued. There are no commissions on premiums that are waived, or on extra premiums for hazards or physical conditions. Commissions will be paid on premiums received by the Company on business produced by the Agent, less any premiums returned to the insured for any reason. Recognizing that the Agent's profit or loss is solely dependent upon Agent's degree or skill and effort, these commissions are to be in full satisfaction of all claims upon the Company account of services or expenses under this contract. At the option of the Company, payment of commissions will be held in abeyance for 180 days after contract to determine the existence of any sums due the Company which are to be set-off against commissions.

This contract has the standard commission schedule (AGTSTD) unless otherwise indicated. Commissions earned after termination shall be credited in accordance with the union contract with OPEIU Local 277 AFL-CIO.

#### TERMINATION

Either party may terminate this contract for non-performance of any material provision, or if the other party violates any applicable law, insurance code, or regulation. Either party may terminate this contract without cause by giving 30 days notice. Notice of termination is effective if mailed to the last known address of the other party.

 FEB 08 2001

After termination the Supervising Agent will never use policyholder records, union or credit union membership records, or other business records concerning the business of the Company, including, but not limited to, lead return cards, policyholder lists, computer disks or other storage media, no matter how or when obtained, and whether prepared by the Company, the Agency, the Supervising Agent, or any other person, for the purpose of soliciting the sale or replacement of insurance by the Supervising Agent or by others. All such records will be returned to the Company, without retaining copies.

After termination, the Supervising Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or in any other way to injure the business or reputation of the Company.

**DEPORTMENT**
Should the Supervising Agent at any time, either before or after termination of his contract, wrongfully withhold any funds belonging to any applicant for insurance, a policyholder, or the Company; or should the Supervising Agent induce any policyholder to lapse, relinquish, or surrender a policy with the company; then the Supervising Agent shall immediately forfeit his right to receive any commissions or any other compensation due or to become due, whether vested or otherwise, under this Contract or any other agreement with the Company.

**RELATIONSHIP**
The Supervising Agent is not an employee of the Company. The Supervising Agent has no fixed hours and is free to choose the time and manner in which services are performed. The Supervising Agent shall not represent or imply that the Supervising Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company. The Supervising Agent will not be treated as an employee with respect to services performed under this contract for federal and state tax purposes.

**REQUIREMENT OF WRITING**
All agreements must be in writing. No promise or understanding shall be enforceable unless made in writing.

This contract is signed and is effective _____ ~~2000~~

(*Supervising Agent*) _____

(*Agency*) _____

By_____

~~AMERICAN INCOME LIFE INSURANCE COMPANY~~

By_____

| HIERARCHY INSTRUCTIONS (please print) | | |
|---|---|---|
| Level | Contract Percent | Name |
| | 100 | Scott Smith |
| | | |
| | | |
| | | |
| | | |
| | | |
| Supervising Agent: | 52.5 | Terry Brennan |
| COMMISSION SCHEDULE INSTRUCTIONS | | |
| 52.5 % level 2 | | 50 STD |

*AG-1739 (R0100)) SA 50/30*

AGENCY FEB 08 2001

Received: 05.Apr.01 02:35 PM  From: 6308104121  To: 8019126885    Get faxes by email. Free. eFax.com    Page: 1 of 3

04/05/2001  14:20    6308104121    AMERICAN INCOME    PAGE  01

## AMERICAN INCOME LIFE INSURANCE COMPANY
P.O. Box 2608 Waco, TX 76797

### GENERAL AGENT CONTRACT

### OBLIGATIONS OF GENERAL AGENT
The General Agent agrees:

(a). To obtain, supervise, train and assist Agents.

(b). To be responsible for the acts and obligations of Agents coded to the General Agent, including:
1) All money collected by Agents;
2) All money advanced to Agents by the Company, (except that 57½% General Agents and Regional General Agents shall not be responsible for advances to agents) and 3) All liability of Agents to the Company.

(c) To use all business records, policyholder records, and records of leads, prospects or memberships or other items only for the business purposes of the Company, to hold such records in confidence, to recognize that such records are the property of the Company whether paid for or created by the efforts of the Company, the Agency, the General Agent, or Agent or any other person, and to surrender such records to the Company upon request without retaining copies.

(d) To submit all applications for insurance promptly to the Company and to no other Company.

(e) To never attempt to induce representatives of the Company to end their relationship with the Company, or to breach their contract with the Company.

(f) To never attempt to induce policyholders with the Company to terminate their policies.

(g) To repay the company upon demand all sums owing on the account of the General Agent, including sums charged to such account pursuant to the responsibility of the General Agent for the obligations of representatives coded to such General Agent.

(h) To take no action or make any statement that is injurious or harmful to the Company, its business or its reputation.

(i) During the term of your contract with the Company, you shall not be licensed with or maintain a contract or appointment with any insurance company other than a Torchmark Company.

### LIMITATION OF AUTHORITY
The General Agent does not have authority to:

(a) Obligate the Company except by the terms of the insurance application

(b) Alter the terms of any policy or contract of the Company.

(c) Collect Premium other than in the name of the Company.

(d) Use Advertising or printed matter other than that provided or approved by the Company.

### EXPENSES, ADVANCES, BALANCES
The Company may make advances or allow charges be made on the General Agent's account against commissions to be earned. Such advances or charges shall be added to the account balance of the General Agent. The General Agent shall be responsible for payment in full of such balance, whether or not it appears that future commissions will be sufficient to satisfy such balance, regardless of whether demand for payment has been made.

General Agent shall be responsible for all expenses incurred in the production of business for the Company. General Agent shall at his own expense furnish his own means of transportation, office or place of business, advertisements, fares, leaflets, letterheads, circulars, and any other relevant expenses incurred in the solicitation of insurance for the Company.

General Agent shall be responsible to Company for all loss or damage arising from business done by and entrusted to him and shall indemnify and hold Company harmless from any and all expenses, costs, cause of action, loss or damage resulting from fraudulent or unauthorized acts or omissions of General Agent. Any persons retained by the General and any agents under contract with the Company and assigned to him.

### ADVANCES, SECURITY INTEREST, REMEDIES
The Company is granted a security interest in all commissions earned and any proceeds thereof to secure amounts advanced and to secure all other obligations to the Company. The Company may set-off any amounts due the General Agent. The Company's right of recoupment shall enable the Company to apply any future commissions earned against the account balance until paid in full, regardless of whether this Agreement has been terminated.

### COMMISSIONS
Commissions are determined by the schedule in effect at the time the insurance is issued. There are no commissions on premiums that are waived, or on extra premiums for hazards or physical conditions. Commissions will be paid on premiums received by the company on business produced by the General Agent or any agents assigned to him by the Company, less any premiums returned to the insured for any reason. Commissions earned after termination will be credited to the General Agent if:

· Received: 05.Apr.01 02:36 PM From: 6308104121 To: 8019126885    Get faxes by email. Free. &Fax.com    Page: 2 of 3

04/05/2001   14:28    6308104121    AMERICAN INCOME    PAGE   02

(a) The General Agent has represented the Company in such capacity for one year; and
(b) The termination of the General Agent was not for cause; and,
(c) There has been no breach of this contract by the General Agent.
(d) At the option of the Company, payment of commissions will be held in abeyance for 180 days after contract or termination, existence of any sums due the Company which are to be set-off against commissions.

**TERMINATION**
Either party may terminate this contract for non-performance of any material element, or if the other party violates any applicable law, insurance code, or regulation. Either party may terminate this contract without cause by giving 30 days notice. Notice of termination is effective if mailed to the last known address of the other party.

After termination the General Agent will never use policyholder records, union or credit union membership records, or other business records concerning the business of the Company, including, but not limited to, lead return cards, policyholder lists, computer disks or other storage media, no matter how or when obtained, and whether prepared by the Company, the Agents, the General Agent or any other person, for the purpose of soliciting the sale or replacement of insurance by the General Agent or otherwise. All such records will be returned to the Company, without retaining copies.

After termination, the General Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or in any other way to injure the business or reputation of the Company.

**DEPORTMENT**
Should the General Agent at any time, either before or after termination of his contract, wrongfully withhold any funds belonging to any applicant for insurance, a policyholder, or the Company, or should the General agent induce any policyholder to lapse, relinquish, or surrender a policy with the company; then the General Agent shall immediately forfeit his right to receive any commission or any other compensation due or to become due, whether vested or otherwise, under this Contract or any other agreement with the Company.

**RELATIONSHIP**
The General Agent is not an employee of the Company. The General Agent has no fixed hours and is free to choose the time and manner in which services are performed. The General Agent shall not represent, imply that the General Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company. The General Agent will not be treated as an employee with respect to services performed under this contract for federal and state tax purposes.

**REQUIREMENT OF WRITING**
All agreements must be in writing. No promise or understanding shall be enforceable unless made in writing.

This contract is signed and is effective _____ 4/1 _____ 200_

(General Agent) _____

(Agency) _____

By _____

By _____                                      ANY

TERRANCE  M  BRENNAN
87512
SSEA

CEP

► Received: 05.Apr.01 02:35 PM   From: 6308104121   To: 8019126885          Get faxes by email. Free. eFax.com    Page: 3 of 3

04/05/2001  14:28   6308104121                          AMERICAN INCOME                          PAGE  03

| Level | | Contract Percent | Name | | |
|-------|--|------------------|------|--|--|
| | | 100 | SCOTT SMITH | | |
| | | 70 | JERRY BROWN | | |
| | | | | | |
| | | | | | |
| | | | | | |
| General Agent | | | | | |
| COMMISSION SCHEDULE INSTRUCTIONS | | | | | |
| 70 % | | 65 % | | | |
| 37.5 % | | | Regional General Agent (RGA) or (SGA) | | |

*AG-2022 (R100) GA*

Brennan15



# AMERICAN INCOME LIFE INSURANCE COMPANY

*P.O. Box 2608 Waco, TX 76797*

### STATE GENERAL AGENT CONTRACT

This is a contract between AMERICAN INCOME LIFE INSURANCE COMPANY and the State General Agent who signs below. American Income is referred to as "Company."

### OBLIGATIONS OF STATE GENERAL AGENT

(a) During the term of your contract with the Company, you shall not be licensed with or maintain a contract or appointment with any other insurance company.
(b) To follow Company regulations.
(c) To be responsible for the acts and obligations of Agents, General Agents, Public Relations personnel, and other representatives coded to the State General
   Agent, including:
   1. All money collected by such persons,
   2. All money advanced to such persons by the Company, and
   3. All liability of such persons to the Company
(d) To repay to the Company on demand all sums owing on the account of the State General Agent, including sums charged to such account pursuant to the responsibility of the State General Agent for the obligations of representatives coded to the State General Agent.
(e) To keep appropriate business records and to give sach to the Company upon request.
(f) To use all business records, policyholder records, and records of leads, prospects or memberships of organizations, only for the business purposes of the Company, to hold such records in confidence, to recognize that such records are the property of the Company whether paid for or created by the efforts of the Company, the State General Agent, the representatives coded to the State General Agent, or any other person, and to surrender such records to the Company upon request without retaining copies of such except as authorized by the Company in writing.
(g) To submit all applications for insurance promptly to the Company, and to no other Company.
(h) To never attempt to induce representatives of the Company to end their relationship with the Company, or to breach their contract with the Company.
(i) To never attempt to induce policyholders with the Company to terminate their policies.
(j) To take no action or make any statement that is injurious or harmful to the Company, its business, or its reputation.

### LIMITATION OF AUTHORITY

The State General Agent does not have the authority to:

(a) Obligate the Company except by the terms of the insurance application.
(b) Alter the terms of any policy or contract of the Company.
(c) Use advertising or printed matter other than that provided or approved by the Company.
(d) Collect premium other than in the name of the Company.

### ADVANCES, SECURITY INTEREST, REMEDIES

The Company is granted a security interest in all commissions earned and any proceeds thereof to secure amounts advanced and to secure all other obligations to the Company. The Company may set-off any amount due the State General Agent. The Company's right of recoupment shall enable the Company to apply any future commissions earned against the account balance until paid in full, regardless of whether this Agreement has been terminated.

### TERMINATION

Either party may terminate this contract for non-performance of any material element, or if the other party violates any applicable law, insurance code, or regulation. Either party may terminate this contract without cause by giving 30 days notice. Notice of termination is effective if mailed to the last known address of the other party.

For 6 months after termination, the State General Agent will not solicit or accept the services of any Agent or other representative of the Company, whether for the State General Agent or for any other insurance company. Without time limitation, the State General Agent will never induce representatives of the Company to violate the terms or conditions of their contract with the Company.

For 1 year after termination, the State General Agent will not engage in the life or health insurance business in any territory possessed by the State General Agent during the year proceeding termination, utilizing the union or credit union sales procedures of the Company. The prohibited procedures include:

(a) Contacting or receiving the approval of union or credit union for the solicitation of their members for the sale of insurance.
(b) Mailing to union or credit union members inviting inquiry for the purpose of soliciting such member for the sale of insurance.
(c) Placing group insurance with union or credit unions for the purpose of soliciting the members for the sale of insurance.

After termination, the State General Agent will never use policyholder records, union or credit union membership records, or other business records concerning the business of the Company, no matter how or when obtained, for the purpose of soliciting the sale of insurance by the State General Agent or by others. All such records will be returned to the Company.

AGENCY   JAN 06 2000

After termination, the State General Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or in any other way to injure the business or reputation of the Company.

State General Agent agrees the money damages for the breach of these termination covenants are difficult to ascertain, would not adequately compensate the Company, and that the Company has no adequate remedy as law. State General Agent agrees the Company is entitled, in addition to other remedies, to injunctive relief for the violation of these covenants.

## COMMISSIONS

Commissions are determined by the schedule in effect at the time the insurance is issued. Commissions will be paid on premiums received by the Company on business produced by the State General Agent, or any agents assigned to him by the Company, less any premiums returned to the insured for any reason. There are no commissions on preliminary term insurance, premiums that are waived, or extra premiums for mortality in excess of standard. Commissions earned after terminations shall be credited to the State General Agent if:

(a) The termination of the State General Agent was not for cause;
(b) There has been no breach of this contract by the State General Agent; and
(c) Commissions earned after termination shall be applied to pay any amount due the Company, except that one half of such commissions may be paid as
   earned to a State General Agent who has five years of continuous service as a State General Agent. Such commissions are payable only for a month in
   which each of the following conditions are met;
   1.  The State General Agent is retired and is not involved in the insurance business
   2.  The only amount owed the Company is the State General Agent's balance and the balances of accounts for which the State General Agent is responsible.
   3.  The State General Agent has a formula value according to the Company's 10 and 36 test of less than 100.
   4.  There has been no breach of this contract by the State General Agent.
   5.  The remaining one half of the earned commission retained will be sufficient to pay the balance in full (including interest, charges and reversions of accounts for which the State General Agent is responsible) in less than five years from the date of termination. After the death of the State General Agent any commissions payable shall be paid to the estate of the State General Agent.
(d) At the option of the Company, payment of commissions will be held in abeyance for 180 days after contract to determine the existence of any sums due the Company which are to be set-off against commissions.

## DEPORTMENT

Should the State General Agent at any time, either before or after termination of this Contract, wrongfully withhold any funds belonging to any applicant for insurance, a policyholder, or the Company, or should the State General Agent induce any policyholder to lapse, relinquish, or surrender a policy with the company; then the State General Agent shall immediately forfeit his rights to receive any commissions or any other compensation due or to become due, whether vested or otherwise, under this Contract or any other agreement with the Company.

## DECISIONS SOLELY OF THE COMPANY

The Company may, without becoming liable to the State General Agent in any way:

(a) Cease to do business in any territory or place;
(b) Withdraw any policy form in any place but continue to offer it elsewhere;
(c) Reject any application for insurance;
(d) Cancel any policy;
(e) Refund any premium, in which case the State General Agent will repay any commission previously credited with respect to such premium;
(f) Reinstate any policy without liability for further commission on such policy unless the reinstatement is accomplished by the State General Agent.

## NO WAIVER

No provision of this contract shall be waived, nor any rule or procedure of the Company become inapplicable, just because the Company has failed to enforce it before.

## RELATIONSHIP

The State General Agent is not an employee of the Company. The State General Agent has no fixed hours and is free to choose the time and manner in which services are performed. The State General Agent shall not represent or imply that the State General Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company. The State General Agent will not be treated as an employee with respect to services performed under this contract for federal and state tax purposes.

## NONASSIGNABLE

No benefit or right under this contract may be assigned without the consent of the Company.

JAN 06 2000

**REQUIREMENT OF WRITING**

All agreements between the Company and the State General Agent must be in writing. No promise or understanding shall be enforceable unless made in writing. The undersigned hereby adopts and becomes party to the collective bargaining agreement with O.P.E.I.U, Local 277.

Signed this ___1ˢᵗ___ day of ___JANUARY___ 2000.

_____
STATE GENERAL AGENT

_____
AMERICAN INCOME LIFE INSURANCE COMPANY

SCOTT A SMITH
81716    SSAA

                                CEP

SCOTT A SMITH
86297         SMAA
                                CEP

SMITH SCOTT A (SGA-RGA)
892         SMIA

                                CEP

SMITH SCOTT A (SGA/RGA)
85954         SS6A
                                CEP

SMITH SCOTT A (SGA-RGA)
87399         SS1A

                                CEP

SMITH SCOTT A (SGA-RGA)
87419         SSGA
                                CEP

SMITH SCOTT A (SGA-MGA)
90127         SSOA

                                CEP

SMITH SCOTT A (SGA-RGA)
92209         SSMA
                                CEP

SMITH SCOTT A (SGA-MGA)
91420         SSEA

                                CEP

SMITH SCOTT A (SGA-MGA)
92226         SSMA

                                CEP

JAN 02 2000

Smith6

# AMERICAN INCOME LIFE INSURANCE COMPANY

*P.O. Box 2608 Waco, TX 76797*

**STATE GENERAL AGENT CONTRACT**
This is a contract between AMERICAN INCOME LIFE INSURANCE COMPANY and the State General Agent who signs below. American Income is referred to as "Company."

## OBLIGATIONS OF STATE GENERAL AGENT

(a) During the term of your contract with the Company, you shall not be licensed with or maintain a contract or appointment with any other insurance company.

(b) To follow Company regulations.

(c) To be responsible for the acts and obligations of Agents, General Agents, Public Relations personnel, and other representatives coded to the State General
   Agent, including:
   1. All money collected by such persons,
   2. All money advanced to such persons by the Company, and
   3. All liability of such persons to the Company

(d) To repay to the Company on demand all sums owing on the account of the State General Agent, including sums charged to such account pursuant to the responsibility of the State General Agent for the obligations of representatives coded to the State General Agent.

(e) To keep appropriate business records and to give such to the Company upon request.

(f) To use all business records, policyholder records, and records of leads, prospects or memberships of organizations, only for the business purposes of the Company, to hold such records in confidence, to recognize that such records are the property of the Company whether paid for or created by the efforts of the Company, the State General Agent, the representatives coded to the State General Agent, or any other person, and to surrender such records to the Company upon request without retaining copies of such except as authorized by the Company in writing.

(g) To submit all applications for insurance promptly to the Company, and to no other Company.

(h) To never attempt to induce representatives of the Company to end their relationship with the Company, or to breach their contract with the Company.

(i) To never attempt to induce policyholders with the Company to terminate their policies.

(j) To take no action or make any statement that is injurious or harmful to the Company, its business, or its reputation.

## LIMITATION OF AUTHORITY
The State General Agent does not have the authority to:

(a) Obligate the Company except by the terms of the insurance application.

(b) Alter the terms of any policy or contract of the Company.

(c) Use advertising or printed matter other than that provided or approved by the Company.

(d) Collect premium other than in the name of the Company.

## ADVANCES, SECURITY INTEREST, REMEDIES
The Company is granted a security interest in all commissions earned and any proceeds thereof to secure amounts advanced and to secure all other obligations to the Company. The Company may set-off any amount due the State General Agent. The Company's right of recoupment shall enable the Company to apply any future commissions earned against the account balance until paid in full, regardless of whether this Agreement has been terminated.

## TERMINATION

Either party may terminate this contract for non-performance of any material element, or if the other party violates any applicable law, insurance code, or regulation. Either party may terminate this contract without cause by giving 30 days notice. Notice of termination is effective if mailed to the last known address of the other party.

For 6 months after termination, the State General Agent will not solicit or accept the services of any Agent or other representative of the Company, whether for the State General Agent or for any other insurance company. Without time limitation, the State General Agent will never induce representatives of the Company to violate the terms or conditions of their contract with the Company.

For 1 year after termination, the State General Agent will not engage in the life or health insurance business in any territory possessed by the State General Agent during the year proceeding termination, utilizing the union or credit union sales procedures of the Company. The prohibited procedures include:

(a) Contacting or receiving the approval of union or credit union for the solicitation of their members for the sale of insurance.

(b) Mailing to union or credit union members inviting inquiry for the purpose of soliciting such member for the sale of insurance.

(c) Placing group insurance with union or credit unions for the purpose of soliciting the members for the sale of insurance.

After termination, the State General Agent will never use policyholder records, union or credit union membership records, or other business records concerning the business of the Company, no matter how or when obtained, for the purpose of soliciting the sale of insurance by the State General Agent or by others. All such records will be returned to the Company.

AGENCY   JAN 06 2000

Smith1

After termination, the State General Agent will never, directly or indirectly, attempt to induce policyholders with the Company to terminate their policies or in any other way to injure the business or reputation of the Company.

State General Agent agrees the money damages for the breach of these termination covenants are difficult to ascertain, would not adequately compensate the Company, and that the Company has no adequate remedy as law. State General Agent agrees the Company is entitled, in addition to other remedies, to injunctive relief for the violation of these covenants.

## COMMISSIONS

Commissions are determined by the schedule in effect at the time the insurance is issued. Commissions will be paid on premiums received by the Company on business produced by the State General Agent, or any agents assigned to him by the Company, less any premiums returned to the insured for any reason. There are no commissions on preliminary term insurance, premiums that are waived, or extra premiums for mortality in excess of standard. Commissions earned after terminations shall be credited to the State General Agent if:

(a) The termination of the State General Agent was not for cause;
(b) There has been no breach of this contract by the State General Agent; and
(c) Commissions earned after termination shall be applied to pay any amount due the Company, except that one half of such commissions may be paid as

earned to a State General Agent who has five years of continuous service as a State General Agent. Such commissions are payable only for a month in

which each of the following conditions are met;
1.   The State General Agent is retired and is not involved in the insurance business
2.   The only amount owed the Company is the State General Agent's balance and the balances of accounts for which the State General Agent is responsible.
3.   The State General Agent has a formula value according to the Company's 10 and 36 test of less than 100.
4.   There has been no breach of this contract by the State General Agent.
5.   The remaining one half of the earned commission retained will be sufficient to pay the balance in full (including interest, charges and reversions of accounts for which the State General Agent is responsible) in less than five years from the date of termination. After the death of the State General Agent any commissions payable shall be paid to the estate of the State General Agent.
(d)  At the option of the Company, payment of commissions will be held in abeyance for 180 days after contract to determine the existence of any sums due the Company which are to be set-off against commissions.

## DEPORTMENT

Should the State General Agent at any time, either before or after termination of this Contract, wrongfully withhold any funds belonging to any applicant for insurance, a policyholder, or the Company, or should the State General Agent induce any policyholder to lapse, relinquish, or surrender a policy with the company; then the State General Agent shall immediately forfeit his rights to receive any commissions or any other compensation due or to become due, whether vested or otherwise, under this Contract or any other agreement with the Company.

## DECISIONS SOLELY OF THE COMPANY

The Company may, without becoming liable to the State General Agent in any way:

(a) Cease to do business in any territory or place;
(b) Withdraw any policy form in any place but continue to offer it elsewhere;
(c) Reject any application for insurance;
(d) Cancel any policy;
(e) Refund any premium, in which case the State General Agent will repay any commission previously credited with respect to such premium;
(f) Reinstate any policy without liability for further commission on such policy unless the reinstatement is accomplished by the State General Agent.

## NO WAIVER

No provision of this contract shall be waived, nor any rule or procedure of the Company become inapplicable, just because the Company has failed to enforce it before.

## RELATIONSHIP

The State General Agent is not an employee of the Company. The State General Agent has no fixed hours and is free to choose the time and manner in which services are performed. The State General Agent shall not represent or imply that the State General Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company. The State General Agent will not be treated as an employee with respect to services performed under this contract for federal and state tax purposes.

## NONASSIGNABLE

No benefit or right under this contract may be assigned without the consent of the Company.

渋溝菜   JAN 06 2000

Smith2

**REQUIREMENT OF WRITING**

All agreements between the Company and the State General Agent must be in writing. No promise or understanding shall be enforceable unless made in writing. The undersigned hereby adopts and becomes party to the collective bargaining agreement with O.P.E.I.U. Local 277.

Signed this ____1ˢᵗ____ day of __JANUARY__ 2000.

_____
STATE GENERAL AGENT

_____
AMERICAN INCOME LIFE INSURANCE COMPANY

```
SMITH SCOTT A (SGA-MGA)              SCOTT A SMITH
87414        SMEA                    86297        SMAA

                                                                SLM
                    CEP


        SMITH SCOTT A (SGA/RGA)
     85954        SS6A

                                    CEP

  SMITH SCOTT A (SGA-RGA)
87419        SMGA


                    CEP
```

CEP

SMITH SCOTT A (SGA-RGA)
SS1A

87399

Smith3